MILWAUKEE TRANSPORT SERVICES, INC.,
Plaintiff-Appellant,†

v.

FAMILY DOLLAR STORES OF WISCONSIN, INC.,
Defendant-Respondent,

Jessica M. REYNA, Artisan and
Truckers Casualty Company (a division of
Progressive Casualty Insurance Company),
Juan Romero, Guadalupe Montoto and Badger
Mutual Insurance Company, Defendants.

Court of Appeals

*No. 2012AP2538. Submitted on briefs August 6, 2013.
—Decided September 17, 2013.*

2013 WI App 124

(Also reported in 840 N.W.2d 132.)

† Petition for Review denied February 19, 2014.

170

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Karri E. Johnson* and *Patti J. Kurth* of *Emile Banks & Associates, LLC,* of Milwaukee.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Joseph M. Wirth* and *Matthew L. Granitz* of *Piper & Schmidt* of Milwaukee.

Before Curley, P.J., Fine and Kessler, JJ.

¶ 1. KESSLER, J.   Milwaukee Transport Services, Inc. appeals an order of the circuit court granting summary judgment in favor of Family Dollar Stores of Wisconsin, Inc. (Family Dollar). The circuit court found that Jessica Reyna, an employee of Family Dollar, was

172

not acting within the scope of her employment when she was on her way to work and was involved in an accident with a Milwaukee County bus, thereby relieving Family Dollar of all liability to Milwaukee Transport Services. We affirm.

## BACKGROUND

¶ 2. On January 23, 2010, shortly after 8:00 a.m., Reyna was contacted by her manager at Family Dollar and was asked to go to the store, pick up store receipts and deposit them at a local bank. Reyna, an assistant manager, was contacted on her day off. Approximately two and one half hours after she was contacted by her manager, Reyna left her home for Family Dollar. While driving to the store, but prior to reaching, Reyna was involved in an accident with a Milwaukee County bus. Reyna was not directed by her Family Dollar manager to take any particular route to the store.

¶ 3. Milwaukee Transport Services filed the lawsuit underlying this appeal against Family Dollar, its liability carriers, and Reyna, alleging that Reyna caused the accident during the scope of her employment with Family Dollar. Milwaukee Transport Services sought reimbursement for damages sustained.

¶ 4. In her deposition, Reyna testified that she was at her home on the morning of January 23, 2010, when she received a phone call from a manager at the Family Dollar asking her to do a "bank run." Reyna testified that it was standard policy for assistant managers, such as herself, to make bank runs on their days off. She stated that the assistant managers "took turns once a month going to the bank," and that she was not aware that she would be the assistant manager called that day. Reyna stated that she did not leave for Family

Dollar immediately because she did not have immediate transportation; rather, she contacted two people to ask for a ride. Juan Romero agreed to let her use his van to complete the bank run. Reyna testified that she did not inform her manager of her transportation difficulties because "it's [her] responsibility" to get to the store. Reyna stated that Family Dollar did not pay her for bank runs, reimburse her for mileage, pay for gas, send a car for her, or direct her as to which route to take to the store. Reyna also testified that refusing to go on the bank run would not necessarily have resulted in her employment termination, but would have resulted in a "strike," or "formal write up," which eventually could lead to termination.

¶ 5. Family Dollar moved for summary judgment, arguing that because Reyna's accident occurred on her way to work, she was not acting within the scope of her employment at the time of the accident. Therefore, Family Dollar argued, it was not liable for any damages incurred by Milwaukee Transport Services under the doctrine of *respondeat superior.* In an oral ruling, the circuit court granted Family Dollar's motion. Relying on our decision in *DeRuyter v. Wisconsin Elec. Power Co.*, 200 Wis. 2d 349, 546 N.W.2d 534 (Ct. App. 1996), *aff'd* 211 Wis. 2d 169, 565 N.W.2d 118 (1997), the circuit court found that "[a]s a matter of law [Reyna was] not within the scope of her employment at the time that this accident happened." This appeal follows.

## DISCUSSION

¶ 6. Citing our decision in *DeRuyter*, the circuit court ruled that as a matter of law, Reyna was not acting within the scope of her employment when she was involved in the accident on her way to work. We agree.

174

## I. Standard of Review.

¶ 7. We review the circuit court's decision on summary judgment *de novo*. *Nell v. Froedtert & Cmty. Health*, 2013 WI App 40, ¶ 5, 346 Wis. 2d 773, 829 N.W.2d 175. When we review a motion for summary judgment we apply the same methodology as the circuit court, but we do not accord the circuit court's conclusion any deference. *Kotecki & Radtke, S.C. v. Johnson*, 192 Wis. 2d 429, 436, 531 N.W.2d 606 (Ct. App. 1995).

## II. The *DeRuyter* Holding.

¶ 8. "Under the doctrine of *respondeat superior* employers can be held vicariously liable for the negligent acts of their employees while they are acting within the scope of their employment." *DeRuyter*, 200 Wis. 2d at 360. We stated in *DeRuyter* that the "touchstone of scope-of-employment issues ... is employer control over the employee." *Id.* at 360–61.

¶ 9. In that case, Glenn DeRuyter was driving a tanker-truck filled with jet fuel northbound on Interstate 94 in Racine County. *Id.* at 355. Michael Schmaling was also driving northbound on the interstate on his way to a vocational training session for Wisconsin Electric. *Id.* Schmaling attempted to pass DeRuyter. *Id.* at 355–56. Schmaling lost control of his vehicle and spun onto the northbound lanes of Interstate 94, causing DeRuyter's tanker to jackknife. *Id.* at 356. The tanker rolled down an embankment and burst into flames, killing DeRuyter. *Id.* Two civil actions were commenced after the accident, both seeking to establish

Wisconsin Electric's liability by alleging that Schmaling was acting within the scope of his employment when the accident occurred. *Id.*

¶ 10.　We concluded that Schmaling was *not* acting within the scope of his employment with Wisconsin Electric at the time of the accident because "an employee is not acting within the scope of employment while traveling to and from work." *Id.* at 361. At the time of the accident, Schmaling was traveling to a required training session, was using a map supplied by his employer, was being paid a "temporary transfer allowance" because his assignment was away from his ordinary place of employment, and was subject to a "fitness for duty" requirement. *See id.* at 357–58. We held that an employer could only be found to be vicariously liable for an employee's negligent acts while commuting to work "when the employer exercises control over the method or route of the employee's travel to or from work." *Id.* at 361.

██

¶ 11.　We explained that generally "it is the business of the employee to present himself at the place of employment, and the relation of master and servant does not exist while he is going between his home and place of employment." *Id.* at 361. It is only when the employer "exercises control over the method or route of the employee's travel to or from work can the employee be said to be acting within his or her employment" because while commuting "without such control, the employee is not actuated by a purpose to serve the employer . . . but is solely promoting the employee's 'own convenience.' " *Id.* at 361–62 (citation omitted).

¶ 12.　Milwaukee Transport Services argues that Family Dollar created the necessity for Reyna's travel and that she did not have a "fixed place of employment"

on the day of the accident because she was going to a bank. This argument overlooks the fundamental premise of our holding in *DeRuyter*—Family Dollar did not exercise control over Reyna's route or method of travel. Reyna was responsible for her own transportation and her own travel route. Reyna was en route to her "given place of employment—"the Family Dollar where she was an assistant manager. Contrary to the cases cited by Milwaukee Transport Services, travel was not an integral part of Reyna's responsibilities, although the occasional run may have been. We need not reach that question because the accident occurred before Reyna arrived at work. Accordingly, Reyna was not acting within the scope of her employment at the time of the accident.

### III. Exceptions to *DeRuyter.*

¶ 13.   Milwaukee Transport Services also argues that even if the *DeRuyter* holding applies to the facts of this case, we should consider exceptions to the rule. Namely, Milwaukee Transport Services urges us to apply a "Required Vehicle" exception and a "Special Mission" exception to this case. We decline to do so.

### A.   Required Vehicle Exception.

¶ 14.   Relying on *Carter v. Reynolds*, 815 A.2d 460 (N.J. 2003), Milwaukee Transport Services argues that because Family Dollar required Reyna to make her own transportation arrangements, Family Dollar should be liable for damages resulting from Reyna's accident.

¶ 15.   *Carter* held that exceptions to the "going and coming rule" of employee commuting exist when: "(1) the employee is engaged in a special errand or

177

mission on the employer's behalf; (2) the employer requires the employee to drive his or her personal vehicle to work so that the vehicle may be used for work-related tasks; and (3) the employee is 'on-call.' " *Id.* at 467 (citation omitted).

█

¶ 16. We decline to adopt the *Carter* exception to our *DeRuyter* holding. The record does not support doing so here. Reyna has not demonstrated that "bank runs" are special errands—she testified that assistant managers routinely rotated performing bank runs and that bank runs were an ordinary part of her employment as an assistant manager. Family Dollar did not dictate Reyna's method of transportation—she was not necessarily required to use her own personal vehicle or to routinely drive a vehicle to work. She was only required to arrange her own transportation, which could have been bus, taxi, or walking. Finally, Reyna was not "on-call." She did not know she was going to be called that day, but she understood the bank run scheduling procedures. She left for the store at her convenience. The record does not provide a factual basis for any of the elements of the *Carter* exception.

## B. Special Mission Exception.

█

¶ 17. Milwaukee Transport Services also urges us to reexamine the "special mission exception" we rejected in *DeRuyter*. We do not have the authority to modify language from our prior decisions, only the supreme court may do so. *See Cook v. Cook*, 208 Wis. 2d 166, 189–190, 560 N.W.2d 246 (1997) ("[T]he constitution and statutes must be read to provide that only the supreme court, the highest court in the state, has the

power to overrule, modify or withdraw language from a published opinion of the court of appeals.").

¶ 18.  For the foregoing reasons, we affirm the circuit court.

*By the Court.*—Order affirmed.