Tami L. KRAFT, Plaintiff-Appellant,

v.

Michael W. STEINHAFEL, Smith, Gunderson & Rowen, S.C., Schroeder Group, S.C., ABC Insurance Company and XYZ Insurance Company, Defendants-Respondents.†

Court of Appeals

*No. 2014AP1679. Submitted on briefs March 12, 2015. —Decided July 29, 2015.*

**2015 WI App 62**

(Also reported in 869 N.W.2d 506.)

† Petition for Review Denied.

673

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Michael P. Erhard* of *Erhard & Payette, LLC*, Madison.

On behalf of the defendants-respondents, the cause was submitted on the brief of *John L. Pollock* of *Litchfield Cavo LLP*, Brookfield, *Terry E. Johnson* of

*Peterson, Johnson & Murray, S.C.*, Milwaukee, *Ryan P. Fetherston* of *Peterson, Johnson & Murray, S.C.*, Milwaukee, and *Michael R. Vescio* of *Smith Amundsen LLC*, Milwaukee.

Before Brown, C.J., Neubauer, P.J., and Gundrum, J.

¶ 1. GUNDRUM, J.   Tami L. Kraft appeals the circuit court's grant of summary judgments to Michael W. Steinhafel, Smith, Gunderson & Rowen, S.C. ("SGR"), and the Schroeder Group, S.C., as well as the court's denial of her motion for reconsideration. Kraft contends the court erred in concluding she was required to present expert testimony in order to prove Steinhafel committed legal malpractice in his representation of her. We agree with Kraft that as to the specific allegations of malpractice she continues to assert on appeal, no expert testimony is required. We reverse and remand for further proceedings.

## Background

¶ 2.   In 2000, Kraft became licensed to sell insurance products in Wisconsin. In August 2006, the Office of the Commissioner of Insurance (OCI) temporarily suspended, and filed a complaint seeking revocation of, Kraft's license based upon various allegations, including that Kraft made false representations with regard to multiple life insurance applications. Kraft retained Steinhafel, an attorney then working for defendant SGR,[1] to represent her regarding the OCI action.

¶ 3.   In November 2006, an evidentiary hearing was held before an administrative law judge (ALJ) on

---

[1] At the time Kraft first hired Steinhafel, Smith, Gunderson & Rowen, S.C., was known as Steinhafel, Smith & Rowen,

the OCI charges, after which the ALJ ordered post-hearing briefing. OCI submitted a brief, but Kraft did not. Instead, Steinhafel negotiated a stipulation and order with OCI which Kraft ultimately signed. The stipulation and order provided that Kraft agreed to the revocation of all of her Wisconsin insurance intermediary licenses, but did not specify a time within which Kraft was precluded from applying for a new license. The ALJ signed the stipulation and order on February 22, 2007, revoking Kraft's license as of that date.

¶ 4. Steinhafel left SGR on or around March or April 2007 and practiced law on his own for several months. On October 1, 2007, he began employment as an attorney with the Schroeder Group. Steinhafel sent Kraft a letter asking her to continue as his client in his new employment with the Group. While Steinhafel was working for the Group, he and Kraft continued to communicate regarding her license revocation. Steinhafel remained employed with the Group until taking medical leave in May 2008. In June 2008, the Group corresponded with Kraft to tell her she needed to get another attorney as no one at the firm handled OCI cases.

¶ 5. According to Kraft's deposition testimony, as a result of the Schroeder Group's June 2008 correspondence, Kraft understood Steinhafel was no longer her counsel, and she subsequently attempted on her own to reapply with OCI for her license. Kraft's attempt was unsuccessful, and she then hired new counsel to assist her. Through this new counsel, Kraft sought an administrative hearing on OCI's denial of her application. After briefing and a hearing, the ALJ denied Kraft's appeal in December 2008, finding "the plain

S.C. We will use "SGR," based on the defendant's current name, for the remainder of this opinion.

language of [WIS. STAT. §] 628.10(3) [2013–14[2]] to be determinative in this case," and noting that the stipulation and order entered in February 2007 "did not specify a time period, so the maximum 5 year revocation period specified in subsection (3) of [§] 628.10 . . . applies."

¶ 6.  In 2012, Kraft filed this action alleging "legal malpractice/negligence" by Steinhafel in his representation of her on the OCI matter. In her complaint, Kraft alleges Steinhafel's representation was deficient in several respects, including that Steinhafel (1) was inadequately prepared for and inadequately prepared her and other witnesses for the November 2006 hearing before the ALJ; (2) failed to call Kraft as a witness, "admit key pieces of evidence into the record," and "properly defend Kraft at the hearing"; (3) failed to file a brief in response to OCI's posthearing brief; (4) despite a statutorily mandated five-year license revocation if revocation is ordered without specifying a time period, represented to Kraft prior to her signing of the stipulation and order that, as Kraft states it, "if she stipulated, she could surrender her license on Friday and reapply on Monday without any problems and avoid months waiting for [the ALJ] to make a decision"; and (5) despite the five-year rule, after the ALJ signed the stipulation and order, represented to Kraft that she only needed to wait 120 days to reapply for her license and continued to represent to Kraft through May 2008 that the rule did not apply and he was working on getting her license reinstated. All defendants-respondents moved for summary judgment, and the circuit court granted their motions on the ground that Kraft needed expert testimony in

---

[2] All references to the Wisconsin Statutes are to the 2013–14 version unless otherwise noted.

678

order to prove Steinhafel breached his duty of care to her, and she had not provided such testimony. Kraft appeals. Additional facts are set forth as necessary.

*Discussion*

¶ 7.  Despite Kraft's various allegations before the circuit court of unsatisfactory performance by Steinhafel, on appeal she asserts only that the court erred in granting summary judgments to the defendants-respondents with regard to her claim that (1) prior to her signing of the stipulation and order, Steinhafel misinformed her as to the effect the document would have on her license and (2) after the ALJ signed the stipulation and order, Steinhafel continued to "string her along" regarding her ability to regain her license much sooner than in five years.[3] Kraft contends the court erred in concluding expert testimony was needed in order for her to prove the defendants-respondents breached any duty to her. All of the defendants-respondents maintain that the court correctly granted their summary judgment motions because expert testimony is necessary to support Kraft's claims of malpractice and she failed to produce such testimony. The Schroeder Group also seeks affirmance on the ground that nothing that occurred between October 1, 2007 and May 2008—the months Steinhafel worked for the Group—caused Kraft's claimed loss.

¶ 8.  Based on the specific grounds of Kraft's appeal and the facts of this case, we hold that Kraft's remaining liability claims against the defendants-

---

[3] We consider abandoned any issues we do not address herein that Kraft may have raised before the circuit court. *A.O. Smith Corp. v. Allstate Ins. Cos.*, 222 Wis. 2d 475, 491, 588 N.W.2d 285 (Ct. App. 1998) ("an issue raised in the trial court, but not raised on appeal, is deemed abandoned").

respondents are not so complex as to require expert testimony. As to the Schroeder Group's separate contention, we agree with Kraft that Steinhafel's alleged conduct of stringing her along while employed by the Group may have caused her some additional harm, and she is entitled to try to prove that.

■

¶ 9.   We review de novo a circuit court's grant of summary judgment, applying the same standards as the circuit court, which are laid out in WIS. STAT. § 802.08. *Racine Cnty. v. Oracular Milwaukee, Inc.*, 2010 WI 25, ¶ 24, 323 Wis. 2d 682, 781 N.W.2d 88. The party seeking summary judgment bears the burden of demonstrating there are no genuine issues of material fact and it is entitled to judgment as a matter of law. *Grosskopf Oil, Inc. v. Winter*, 156 Wis. 2d 575, 581, 457 N.W.2d 514 (Ct. App. 1990). The nonmoving party is afforded the benefit of all reasonable inferences from the facts of record. *Novell v. Migliaccio*, 2010 WI App 67, ¶ 9, 325 Wis. 2d 230, 783 N.W.2d 897. We will reverse a grant of summary judgment if the circuit court incorrectly decided the legal issues or if material facts are in dispute. *Selzer v. Brunsell Bros.*, 2002 WI App 232, ¶ 10, 257 Wis. 2d 809, 652 N.W.2d 806. "In addition, whether expert testimony is necessary to prove a given claim is a question of law that we review de novo." *Oracular Milwaukee, Inc.*, 323 Wis. 2d 682, ¶ 24.

¶ 10.   The relevant statute on the issue of when an individual may reapply for his or her insurance license after revocation is WIS. STAT. § 628.10(3), which states:

DELAY FOR NEW APPLICATION. An order revoking an intermediary's . . . license under sub. (2)(b) or (cr) may

specify a time not to exceed 5 years within which the former intermediary . . . may not apply for a new license. *If no time is specified, the intermediary . . . may not apply for 5 years.* (Emphasis added.)

There is no dispute that the order revoking Kraft's license did not specify a time period applicable to the revocation. As a result, by the plain language of the statute, Kraft was prohibited from applying for her license for five years.

¶ 11. The defendants-respondents argue expert testimony is needed for a determination as to whether Steinhafel's actions, as alleged by Kraft, constituted legal malpractice. A claim of legal malpractice requires the claimant to prove: (1) the existence of an attorney-client relationship, (2) acts or omissions constituting the alleged negligence, (3) that the acts or omissions proximately caused the plaintiff's injury, and (4) the extent of the injury. *See Lewandowski v. Continental Cas . Co.*, 88 Wis. 2d 271, 277, 276 N.W.2d 284 (1979). Only the second and third elements are at issue in this appeal.

¶ 12. The second element essentially asks whether the attorney in question breached his/her duty of care to his/her client, i.e., whether the attorney failed "to exercise that degree of knowledge, care, skill, ability and diligence usually possessed and exercised by members of the legal profession in this state." *Pierce v. Colwell*, 209 Wis. 2d 355, 362, 563 N.W.2d 166 (Ct. App. 1997). Expert testimony on this question is generally required; however, not "(1) where the breach is so obvious, apparent and undisputed that it may be determined by a court as a matter of law; or (2) where the matters to be proven do not involve specialized knowl-

edge, skill, or experience." *DeThorne v. Bakken*, 196 Wis. 2d 713, 718, 539 N.W.2d 695 (Ct. App. 1995).

■

¶ 13.  Steinhafel testified repeatedly in his deposition he knew the five-year rule applied to Kraft, he told her the rule applied to her and her license would be revoked for five years based upon the stipulation and order, and that she "knew" this. Kraft averred in her affidavit and testified in her deposition that Steinhafel told her prior to her signing of the stipulation and order that if she signed it she could reapply for her license immediately thereafter, and that shortly after the ALJ signed the stipulation and order, he told her she could reapply for her license in 120 days. She also pointedly testified and averred she was not aware before signing the stipulation and order, and for more than a year thereafter, that her license would be revoked for five years as a result of the stipulation and order. She averred in her affidavit that in May 2007, several months after her license was revoked, she "confronted Steinhafel about the applicability of the five-year rule to [her] situation" and Steinhafel "assured [her] that it did not apply in [her] case." She averred and testified that Steinhafel "str[u]ng her along" until May 2008, which included months during which he worked for the Schroeder Group in addition to working for himself and SGR, by telling her she could get her license reinstated much sooner than five years.[4] These are simple credibility determinations—

---

[4] In addition, in her interrogatory responses, Kraft details some of this "stringing along." As a sampling, she states that on:

(a) October 27, 2007, Steinhafel told her she could reapply on November 1, 2007, and "said he would send something to the judge by November 5";

who is telling the truth—to be made by a fact finder and do not require specialized knowledge, skill, or experience to understand.

¶ 14. In reaching this conclusion, our supreme court's decision in *Olfe v. Gordon*, 93 Wis. 2d 173, 286 N.W.2d 573 (1980), is instructive. In that case, the plaintiff alleged her attorney performed negligently in failing to ensure documentation related to the sale of her home provided her with a first mortgage, which

(b) January 29, 2008, in response to Kraft's message that she was "confused about why [they] are going through OCI and judge, why not just reapply since 120 days over on May 1, 2007," "Steinhafel told [her] that going through Holly/OCI the best option because she can just lift suspension quickly";

(c) February 7, 2008, Kraft had a conversation with Steinhafel in which she "asked him to contact Holly, [and Steinhafel] said wasn't sure OCI open given weather in Madison, later said he would be thorn in Holly's side but also didn't want to 'piss her off' ";

(d) March 31, 2008, "in response to fax [Kraft] sent saying Holly is saying five-year rule applies Steinhafel [told Kraft] this is taken care of and to 'get over it' ";

(e) April 28, 2008, Steinhafel told Kraft

he made headway with Holly last Tuesday and she agreed to fax over reapplication paperwork even though she doesn't like me, 5-year rule does not apply but [Kraft] will need to retake tests and likely have a probationary period, [Steinhafel] will wait until May 1, 2008 and then send in a wave of applications hang in for just a couple of more weeks;

(f) May 8, 2008, Steinhafel told Kraft he was "reviewing briefs and paperwork, will call back but said that Holly will get copy of application and turn around is four weeks tops";

(g) May 17, 2008, Steinhafel informed Kraft that "Holly is off the case on maternity leave and is hoping that no hearing or application is needed," asked Kraft to email Steinhafel if Kraft did not hear back, and said that "May 19, 2008 is the day and [Kraft] should stop worrying and asking about five year rule—it does not apply."

683

would take priority over any other mortgage the buyer might obtain on the premises, in the event the buyer was unable to pay the entire purchase price. *Id.* at 177–79. The first mortgage requirement was something the plaintiff clearly indicated to the attorney she wanted in the sale documentation. *Id.* at 177. The plaintiff further alleged her attorney "failed to specifically advise [her] prior to said sale date" that the mortgage executed by the buyer was "junior to . . . the mortgage executed by [the buyer] to a lender." *Id.* at 179. At trial, the plaintiff testified that prior to signing an offer to purchase related to the sale of her home, she asked her attorney and his law partner, "This isn't a second mortgage, is it?" *Id.* at 178. Her attorney stood silent and the partner stated, "It is second only to cost of construction." *Id.*

¶ 15.   The circuit court granted a motion to dismiss on the ground of insufficiency of the evidence in part because the plaintiff did not provide expert testimony regarding the standard of care for attorneys in similar circumstances and departure from that standard. *Id.* at 177. On appeal, the supreme court recognized that expert testimony generally should be required, but stated exception to that rule is appropriate "where the conduct complained of can be evaluated adequately by a jury in the absence of expert testimony." *Id.* at 181 (quoting *Hill v. Okay Constr. Co.*, 252 N.W.2d 107, 116 (Minn. 1977)). The court expounded that expert testimony is not required to establish a standard of care

> in cases involving conduct not necessarily related to legal expertise where the matters to be proven do not involve "special knowledge or skill or experience on subjects which are not within the realm of the ordinary

experience of mankind, and which require special learning, study, or experience."

*Id.* at 181–82 (citation omitted). The court added that expert testimony on the question of breach is not required

> where no issue is raised as to defendant's responsibility . . ., where the negligence of defendant is apparent and undisputed, and where the record discloses obvious and explicit carelessness in defendant's failure to meet the duty of care owed by him to plaintiff, for the court will not require expert testimony to define further that which is already abundantly clear.

*Id.* (citations omitted; omissions in original).

¶ 16. The *Olfe* court noted that the plaintiff in that case

> [did] not allege that she was harmed by a lack of legal expertise on the part of [her attorney]. [Nor did she] assert that [her attorney] failed to comply with statutes prescribing the necessary formalities concerning the documents' validity. Rather, she seeks to hold [her attorney] liable for his failure to effectuate her intent, even though the documents he prepared were not legally invalid. While preparation of an offer to purchase and preparation of a mortgage involve "special knowledge or skill or experience on subjects which are not within the realm of the ordinary experience of mankind, and which require special learning, study, or experience," proof of Negligence in failing to follow specific instructions concerning the nature and purpose of the documents desired does not require expert testimony . . . . Here [the plaintiff] concedes that the documents drafted by [her attorney] were valid instruments but argues they failed to effectuate her intent and were inconsistent with her specific instructions. We conclude that expert testimony was not required to establish the applicable standard of care and [the

attorney's] alleged departure from that standard in order to have a jury determine the merits of [the plaintiff's] allegations that [her attorney] was negligent in that he failed to properly draft documents consistent with [the plaintiff's] instructions.

*Id.* at 184–85 (citation and emphasis omitted). The court added, "In our view, [her attorney's] silence and [the partner's] answer could reasonably be viewed by one or more jurors as misinforming [the plaintiff] or insufficiently informing her, as she alleges." *Id.* at 187–88.

¶ 17. Similar to *Olfe*, in this case Kraft is not alleging on appeal she was harmed by a lack of legal expertise by Steinhafel nor that the stipulation and order was somehow lacking in its legal validity or skill of preparation. Rather, she alleges and averred that he told her that she "could sign the Stipulation on Friday and reapply for [her] license on Monday," and soon thereafter told her instead that she could reapply after 120 days, and "assured [her] that [the five-year rule] did not apply in [her] case." Kraft further alleges and averred Steinhafel continued to make similar representations throughout the months he worked for the Schroeder Group. Conversely, in his deposition, Steinhafel testified he told Kraft prior to her signing of the stipulation and order that she would not be able to reapply for her license for five years and further testified he never told Kraft she would be able to reapply for her license either immediately after the ALJ signed the stipulation and order or 120 days after that event.

¶ 18. On summary judgment, we must assume the facts of record and reasonable inferences therefrom favor the nonmovant, here Kraft. *Novell*, 325 Wis. 2d

230, ¶ 9. What Steinhafel told Kraft regarding the length of time she would have to wait before getting her license back is a question of material fact for a fact finder to decide, and one that does not involve "special knowledge or skill or experience on subjects which are not within the realm of the ordinary experience of mankind, and which require special learning study, or experience." *See Olfe*, 93 Wis. 2d at 181–82; Wis JI—Civil 1023.5. Additionally, credibility determinations are reserved for the fact finder and are not appropriate for summary judgment. *Pum v. Wisconsin Physicians Serv. Ins. Corp.*, 2007 WI App 10, ¶ 16, 298 Wis. 2d 497, 727 N.W.2d 346 (2006). If a fact finder believes Kraft's evidence, it could easily and reasonably find, without the need for expert testimony, that Steinhafel's conduct amounted to "explicit carelessness in [his] failure to meet the duty of care owed by him." *See Olfe*, 93 Wis. 2d at 181–82.

¶ 19. Distinguishing itself from the other defendants-respondents, but making many similar arguments, the Schroeder Group separately contends Kraft has failed to produce any evidence to show that any alleged wrongdoing by Steinhafel during the time he worked for the Group—from October 1, 2007, through May 2008—caused any damage to Kraft which had not already been caused by Steinhafel prior to Steinhafel beginning his employment with the Group. In its response brief, the Group states: "The only evidence that exists in the record confirms that any action undertaken after February 2007, but earlier than [Kraft's new counsel's] efforts [beginning after the Group informed Kraft in June 2008 she needed to seek other counsel], would have met with the same result that occurred after [new counsel's] efforts."

We assume the "result" the Group is referring to is the ALJ's December 2008 denial of Kraft's license reapplication.

¶ 20. In her reply brief, Kraft does not counter the Schroeder Group's contention that Steinhafel's conduct while employed by the Group did nothing to cause the loss or continued loss of her license for five years. Although Kraft averred and contends she directly communicated with Steinhafel regarding her license at least seventeen times while Steinhafel was employed with the Schroeder Group, she does not argue this communication led to a longer revocation period than she otherwise would have had. As a result, we deem her to have conceded she is not entitled to damages from the Group related to this issue. *Jalovec v. Jalovec*, 2007 WI App 206, ¶ 31, 305 Wis. 2d 467, 739 N.W.2d 834 (arguments asserted by a respondent on appeal and not disputed by appellant in reply brief are taken as admitted).

■■

¶ 21. The Schroeder Group also challenges Kraft's claim she incurred unnecessary damages due to Steinhafel continuing to "string her along" while employed by the Group, damages in the form of expenses for continuing to operate her business office based upon her allegedly misinformed belief her license would be reinstated in the near future as opposed to in five years. Again, the Group asserts it did not cause Kraft any harm because the stipulation and order had already been entered and Steinhafel had already begun "stringing her along" months before Steinhafel ever began work as an attorney for the Group. In addition to joining the other defendants-respondents in arguing that expert testimony is needed to establish a breach in this case, an argument

we have rejected, the Group also asserts expert testimony is necessary "to establish the parameters of acceptable professional conduct, given the underlying fact situation"—i.e., the standard of care—quoting *Cook v. Continental Casualty Co.*, 180 Wis. 2d 237, 246, 509 N.W.2d 100 (Ct. App. 1993) (citation omitted), and to establish "a causal relationship between an alleged breach *of the standard of care and a claimed loss.*"

¶ 22.   Similar to our discussion above, it is within the understanding of the lay juror whether Steinhafel continued to misinform Kraft about the mandatory five-year revocation of her license, including during the time he represented her while employed by the Schroeder Group. Further, the average juror is capable of understanding whether Steinhafel's alleged continued misinforming of Kraft about the effect of the stipulation and order after Steinhafel began his employment with the Group on October 1, 2007, caused Kraft to incur damages in continuing to operate her business office. Upon remand then, the only damage issue as to the Schroeder Group relates to business expenses incurred by Kraft after October 1, 2007, and no expert testimony is required in relation to this.

¶ 23.   As its final argument, the Schroeder Group contends "blaming" it for Steinhafel's "stringing along" of Kraft while Steinhafel was employed by the Group "contradicts the purpose of *respondeat superior* liability." It argues that Steinhafel's alleged conduct toward Kraft relating to stringing her along was outside the scope of his employment for the Group, and thus any damages incurred by Kraft are not attributable to the Group. Kraft responds that Steinhafel's conduct occurred through their communications as part of his employment as an attorney with the Group, and there-

689

fore it may be held liable under a theory of respondeat superior. We agree with Kraft.

¶ 24. The doctrine of respondeat superior allows a nonnegligent employer to be held liable for a negligent employee's actions under certain circumstances. *Lewis v. Physicians Ins. Co. of Wis.*, 2001 WI 60, ¶ 12, 243 Wis. 2d 648, 627 N.W.2d 484. "It arises due to the employer's control or right of control over the employee; because of this control or right of control, the negligence of the employee is imputed to the employer in certain circumstances." *Id.* "Under the doctrine of *respondeat superior* employers can be held vicariously liable for the negligent acts of their employees while they are acting within the scope of their employment." *Milwaukee Transp. Servs., Inc. v. Family Dollar Stores of Wis., Inc.*, 2013 WI App 124, ¶ 8, 351 Wis. 2d 170, 840 N.W.2d 132 (citation omitted).

¶ 25. In her affidavit, Kraft averred that "[f]rom February 2007 through May 2008, Steinhafel continued to string me along by waving the proverbial carrot of imminent reapplication in front of my face" with "[n]early all of my communication and/or correspondence with Steinhafel [being] during normal business hours to his business telephone," and "[a]s a result of his assertions, I continued to operate my insurance business and employ staff so that I would be prepared from day one once my license was reinstated." She further testified in her deposition that the Schroeder Group billed her for Steinhafel's work on her case.

¶ 26. The jury instruction related to scope of employment states:

A servant is within the scope of his or her employment when he or she is performing work or rendering

services he or she was engaged to perform and render within the time and space limits of his or her authority and is actuated by a purpose to serve his or her master in doing what he or she is doing. He or she is within the scope of his or her employment when he or she is . . . doing that which is warranted within the terms of his or her express or implied authority.

Wis JI—Civil 4035. Here, it is undisputed Steinhafel was employed as an attorney with the Schroeder Group when he allegedly continued misinforming Kraft regarding the status of her license, and he provided the alleged misinformation through communications conducted and received at the offices of the Group. The Group also billed Kraft for Steinhafel's services. Kraft's evidence indicates Steinhafel was conducting himself as her counsel and she was relying on him as her counsel. With regard to Steinhafel's representation of Kraft from October 1, 2007, through May 2008, the Group develops no legal argument distinguishing the employee-employer relationship between itself and Steinhafel and the relationship contemplated in the scope of employment definition as set forth in the jury instruction above, and we see no difference. The Group has not demonstrated its entitlement to summary judgment on this issue.

¶ 27. For the foregoing reasons, we reverse and remand for further proceedings consistent with this decision. Because we reverse the circuit court's grant of summary judgments, we need not address separately the court's denial of Kraft's motion for reconsideration.

*By the Court.*—Judgments and order reversed and cause remanded with directions.