**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**August 10, 2022**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP1541**

Cir. Ct. No. **2019SC2998**

**STATE OF WISCONSIN**

**IN COURT OF APPEALS**
**DISTRICT II**

---

**KAMINSKY LAW, S.C.,**

**PLAINTIFF-RESPONDENT,**

**V.**

**HARRY SCHMITZ,**

**DEFENDANT-APPELLANT.**

---

APPEAL from an order of the circuit court for Fond du Lac County: DALE L. ENGLISH, Judge. *Affirmed*.

¶1 GUNDRUM, P.J.[1] Harry Schmitz appeals from an order of the circuit court. He claims the court erred in dismissing his counterclaim for legal malpractice against Kaminsky Law, S.C. We conclude the court did not err.

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(a) (2019-20). All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

*Background*

¶2    Kaminsky Law filed this small claims action alleging Schmitz owed it $4,014.16 pursuant to a written fee agreement for legal services. Schmitz answered, denying he owed Kaminsky Law anything, and he also counterclaimed, seeking $10,000 in damages from Kaminsky Law. On July 13, 2021, the circuit court held a court trial at which the following relevant evidence was presented.

¶3    Dan Kaminsky testified to work he had done in representing Schmitz. His work began on a lawsuit Schmitz and another interested party had filed against Fond du Lac County in connection with an airplane hangar where Schmitz stored his plane. Fond du Lac County subsequently filed a separate eviction action related to the hangar, and Kaminsky performed work in connection with that eviction action as well. "There was a significant amount of litigation that was involved that was joint between the two files," Kaminsky testified. "So when the eviction action happened, they both asked me to represent them in that matter" as well. Kaminsky secured an adjournment in the eviction matter in order to complete discovery, which included deposing the airport manager and representing Schmitz and the other interested party when they were deposed. Additionally, Kaminsky reviewed documents, communicated and consulted with Schmitz and the other interested party, generated correspondence, participated in phone conversations, negotiated a potential settlement, and engaged in briefing as part of his representation in the case. Kaminsky showed the court the files for the two cases "just to show … how much litigation [there was] between the two cases—and they were essentially conducted jointly—went on in this matter."

¶4    Schmitz testified that he only guaranteed the payment of legal fees relating to work on the initial lawsuit he and the interested party had filed against

the County and did not guarantee the payment of fees related to work on the eviction action the County subsequently filed. He claimed Kaminsky

> did nothing in either one of the two cases…. You can go through the files. He never did any discovery, interrogatories, [or] depositions of any other partners other than the airport manager…. He would never keep us in the loop to let us know what was going on with this case. He told us he was going to handle it. He did nothing.… And it brought the whole case down.

¶5      During Schmitz's testimony, the circuit court noted that Schmitz was "claiming [in his counterclaim] that [Kaminsky Law] owes you $10,000" and asked Schmitz "[f]or what," to which Schmitz responded, "I hired DeWitt to represent us, cost $10,000. Here's my payment to them." Schmitz added that DeWitt "told me that the faults of this entire case was directly—Kaminsky was directly responsible for that." When the court asked Schmitz if "somebody from DeWitt is going to come here and testify then as an expert that Attorney Kaminsky messed up," Schmitz admitted he had no such witness.

¶6      The circuit court informed Schmitz that for his claim that Kaminsky "screwed this up or screwed that up or should have done this or didn't do this," Schmitz would "have to have an expert testify as far as the standard of care." Schmitz told the court,

> You can go through the file. I don't need a witness for this. The file will indicate he never did anything in either one of those two cases for discovery or either an order or a request for an order or anything.… He did zero on either case. He never did anything. The only thing he did is just to depose … the airport manager.

Schmitz agreed with the court that he was "[a]bsolutely" claiming that Kaminsky "did a lousy job." The court reiterated that Schmitz had the burden of proof with regard to his malpractice counterclaim and needed to have a legal expert testify "to

render an opinion that in [his/her] opinion, the standard of care for an attorney in Attorney Kaminsky's position was violated by him because he didn't do this, he did do this." Schmitz responded, "[T]he file indicates that … he didn't do anything. The file." The court again reiterated that Schmitz "needed an expert witness to testify as to the standard of care," pointing out that the relevant jury instruction "says that you have to have expert testimony from an attorney as far as a standard of care because a lay person, such as you, doesn't have that knowledge."

¶7 The circuit court sought Kaminsky's response to Schmitz's contention that Schmitz should not be responsible to pay Kaminsky Law for its legal services related to the eviction case. Kaminsky responded that "I attended the small claims [eviction case] return date because [Schmitz] and [the other interested party] notified me that [the interested party] had been served … with the eviction notice and they wanted me to represent them under the existing retainer agreement for the [eviction] case." When the court then asked Schmitz if he agreed that he and the other interested party asked Kaminsky for legal services related to the eviction action, Schmitz responded, "I didn't have anything to do with that. That was [the other interested party]." Schmitz expressed his position that the eviction action the County had filed "was unrelated to" and "entirely separate" from the action he and the other interested party had filed against the County. Schmitz again reiterated to the court "you can go through the file. It will show you that [Kaminsky] didn't do anything…." Schmitz added that "if [Kaminsky] would have done it proper, we would have prevailed." Schmitz acknowledged that "I don't have any witnesses," but stated that "I didn't—I think—I thought that you would go over the court—." Schmitz acknowledged that he himself was not an attorney.

¶8      In response to Schmitz's testimony that he never agreed to have Kaminsky Law perform legal services related to the eviction action by the County, Kaminsky testified that when the eviction action was filed

> they asked me to handle the eviction.  We negotiated extra time to do discovery in the eviction and had a stay of briefing on the main case while we hashed out the eviction case because the eviction case may render moot some of the claims in the main case.…  [Schmitz] sat right next to me at … the trial[] on the [eviction] case telling me things in my ear, trying to give me information.
>
> All of the depositions they're with the [eviction] case number.  They're not on the main case number.  When the bill started to creep up and we exceeded the initial retainer, I was starting to let [Schmitz] know he needed to keep up with the bill.  On June 24, 2019, he paid an additional $2,000, which included all of the work on the [eviction] case, the costs for the depositions on the [eviction] case.

Kaminsky further testified:

> [W]hat [Schmitz is] saying about not informing him, that's all not true, too and I brought all the e-mails to show that.…
>
> [And w]hen [Schmitz's] deposition was taken in the [eviction] case … I appeared as his attorney representing him.  And he's claiming now that he had nothing to do with the [eviction] case.  It's absolutely absurd.…
>
> The entire case was Harry Schmitz's.  And now for him to come here and say, I wasn't really involved, it was [the other interested party's] deal, it's absolutely absurd.  It just blows my mind.

¶9      The circuit court took judicial notice of CCAP entries showing that Schmitz did appear for the court trial in the eviction action.  The court also noted that when Kaminsky filed a motion for reconsideration of the circuit court's decision in the eviction case, Schmitz "filed an affidavit in support of the motion for the reconsideration."  Considering everything, the court noted that "the record does not support [Schmitz's] claim that he was basically hands-off on the eviction, … never

hired Attorney Kaminsky to do anything on that, … I really wasn't involved. The record doesn't support that in the least. So I don't find [Schmitz's] testimony credible."

¶10 The circuit court further found that the eviction action and the lawsuit filed by Schmitz and the other interested party against the County were "interrelated." The court noted that there was discovery done in the eviction action, and Kaminsky had worked out a proposed settlement that would have resolved the eviction action, Schmitz and the other interested party's civil action against the County, and a separate Federal Aviation Administration discrimination complaint that Schmitz had filed against the County, but the settlement fell apart because Schmitz did not approve of it. The court noted that the deposition Kaminsky took of the airport manager was in the eviction case, "[s]o … it strains credibility for [Schmitz] to claim, look it, that eviction wasn't me, it was [the other interested party]. I shouldn't have to pay for it. [Schmitz's] own documents [that he submitted at trial] don't even support that."

¶11 The circuit court found that Kaminsky Law was entitled to the $4,040.16 it sought in its complaint, again noting that "the work that [Kaminsky] did in the eviction case … actually tied into the civil case [that Schmitz and the other interested party filed against the County], and potentially could have resulted in a resolution of everything together."

¶12 Because Schmitz did not have an expert witness "to testify as to the standard of care," the circuit court also ruled that it was dismissing with prejudice Schmitz's counterclaim for $10,000 in damages, specifically the $10,000 retainer for "DeWitt," which was "based on [Schmitz's] claim that Attorney Kaminsky didn't do anything, did a lousy job, didn't do what he was supposed to do." The

court added, "[I]t's not sufficient to say, here, Judge, here's a bunch of papers and you read through those and then you figure out whether or not Mr. Kaminsky malpracticed." The court stated that because Schmitz bore the burden of proof on his counterclaim but did not have an expert to testify as to the standard of care, "[h]is counterclaim fails." Taking interest into account, the court indicated it would grant judgment in the amount of $4,287.50 along with statutory costs and disbursements.

¶13 The circuit court concluded the proceedings and went off the record. Some time later, at the request of Schmitz and Kaminsky Law, the court went back on the record to put on the record a settlement that had been reached between the parties. Schmitz provided Kaminsky with a check in court for $4,400 and Kaminsky stated that "the benefit [to Schmitz] would be that he wouldn't have a judgment entered against him." Kaminsky asked the court to "hold entry of judgment for a few days to process that [check]." Kaminsky would then inform the court if "it's cleared and the matter can be dismissed pursuant to the settlement we just stated on the record." The court agreed to "hold off on entering any judgment until July 21," stating that Kaminsky "can advise the Court either that the check didn't clear and you want the judgment entered or that it did and then you can ask that the matter be dismissed."

¶14 The record indicates that on July 22, 2021, Kaminsky emailed the circuit court indicating that Schmitz's check had cleared and thus the case was "good to dismiss." The court dismissed the case with prejudice on July 23, 2021. Schmitz appeals the court's ruling with regard to his counterclaim.

## *Discussion*

¶15    Schmitz claims the circuit court erred in dismissing his malpractice counterclaim against Kaminsky Law on the basis that Schmitz did not have a legal expert to testify.  The court did not err.

¶16    "[W]hether expert testimony is necessary to prove a given claim is a question of law that we review de novo." ***Kraft v. Steinhafel***, 2015 WI App 62, ¶9, 364 Wis. 2d 672, 869 N.W.2d 506 (citation omitted).

¶17    At the small claims court trial, Schmitz indicated that his counterclaim was because he suffered $10,000 in damages—payment Schmitz made to "DeWitt"—due to Kaminsky committing malpractice by doing "a lousy job."  In attempting to make his case, Schmitz essentially told the court that it should look through "the file" and determine on its own from such a review that Kaminsky committed malpractice.[2]

¶18    To prove a claim of legal malpractice, Schmitz needed to show: "(1) the existence of an attorney-client relationship, (2) acts or omissions constituting the alleged negligence, (3) that the acts or omissions proximately

---

[2] Schmitz claims on appeal that

> deciding [his] counterclaim required only the ability to read the retainer agreement which explicitly identified "the matter" Atty. Kaminsky was hired to do as a single case, *i.e.*, 2018 CV 499.  No legal expertise is necessary to read the agreement to verify this.  Thus, no expert testimony was required here and it was error to dismiss Mr. Schmitz['s counterclaim] with prejudice.

Schmitz is conflating this issue with Kaminsky Law's claim against Schmitz.  It was clear at the trial that Schmitz's counterclaim related to a separate demand of $10,000 Schmitz was seeking from Kaminsky Law because Schmitz "hired DeWitt to represent us, cost $10,000" and DeWitt told him "that the fault[] of this entire case was directly—Kaminsky was directly responsible for that."

8

caused [Schmitz's] injury, and (4) the extent of the injury." *See id.*, ¶11. We further observed in *Steinhafel* that "[t]he second element essentially asks whether the attorney in question breached his/her duty of care to his/her client, i.e., whether the attorney failed 'to exercise that degree of knowledge, care, skill, ability and diligence usually possessed and exercised by members of the legal profession in this state.'" *Id.*, ¶12 (citation omitted). WISCONSIN JI—CIVIL 1023.5 explains that expert testimony from a lawyer is necessary

> because the degree of care, skill, and judgment which a reasonably prudent lawyer would exercise is not a matter within the common knowledge of laypersons. This standard is within the special knowledge of experts in the field of law and can only be established by expert testimony. You, therefore, may not speculate or guess what that standard of care, skill, and judgment is in deciding this case, but rather must attempt to determine this from the expert testimony that you heard in this trial.

¶19    Here, it was not the circuit court's job to dig through the documents provided by Schmitz at the trial and somehow divine that Kaminsky had committed legal malpractice. As the circuit court pointed out, Schmitz had the burden of proof with regard to his legal malpractice counterclaim; thus, he needed to put forth evidence, including expert testimony, to show that Kaminsky breached a duty of care to Schmitz and that such breach caused Schmitz's loss of the $10,000 he was

claiming. Because Schmitz failed to put on such evidence, the court properly dismissed his counterclaim.[3]

¶20 Kaminsky Law filed a motion for costs, fees, and attorney fees pursuant to WIS. STAT. RULE 809.25(3), asserting that Schmitz's appeal is frivolous because no judgment was entered against Schmitz. We questioned whether we had jurisdiction over the appeal and requested the parties to brief the issue. We ultimately conclude Schmitz was aggrieved because the circuit court dismissed his counterclaim and the court's order disposes of the entire case including the counterclaim. Thus, concluding we have jurisdiction, we deny Kaminsky Law's RULE 809.25(3) motion.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.

---

[3] At our request, the parties also briefed whether we have jurisdiction to review Schmitz's claim of error related to his counterclaim. WISCONSIN STAT. § 809.10(4) provides: "MATTERS REVIEWABLE. An appeal from a final judgment or final order brings before the court all prior nonfinal judgments, orders and rulings adverse to the appellant and favorable to the respondent made in the action or proceeding not previously appealed and ruled upon." On July 23, 2021, the circuit court signed and filed a "Dismissal Order," which also stated that it was "a final judgment for purposes of appeal." "Prior" to entering that order, the court had ruled at the trial that Schmitz's counterclaim be dismissed on the basis that he did not have an expert witness. Furthermore, it is not clear that the settlement that occurred in open court after the trial concluded, *see supra* ¶¶13-14, included settlement of Schmitz's counterclaim as opposed to being simply a settlement of Kaminsky Law's claim against Schmitz. *See Roberts Premier Design Corp. v. Adams*, 2021 WI App 52, ¶12, 399 Wis. 2d 151, 963 N.W.2d 796 ("[O]ur case law provides that any agreement to waive appeal rights 'ought to be clearly established, and not made out by way of inference.'" (citation omitted)). And lastly, Schmitz ultimately was aggrieved because the dismissal order disposes of the entire case, including his counterclaim. *See Weina v. Atlantic Mut. Ins. Co.*, 177 Wis. 2d 341, 345, 501 N.W.2d 465 (Ct. App. 1993) ("A person may not appeal from a judgment unless aggrieved by the judgment. A person is aggrieved if the judgment bears directly and injuriously upon his or her interests; the person must be adversely affected in some appreciable manner."). For these reasons, we conclude we have jurisdiction to address Schmitz's claim of error.