Karen R. Yocherer and Lance H. Yocherer,
Plaintiffs-Respondents,

v.

Farmers Insurance Exchange, Defendant-
Appellant-Petitioner.†

Supreme Court

*No. 00–0944. Oral argument November 6, 2001.—Decided
April 30, 2002.*

2002 WI 41

(Also reported in 643 N.W.2d 457.)

† Motion for reconsideration denied 6/4/02.

For the defendant-appellant-petitioner there were briefs by *Douglas J. Carroll, Timothy D. Pagel* and *O'Neill, Schimmel, Quirk & Carroll, S.C.,* Milwaukee, and oral argument by *Douglas J. Carroll.*

For the plaintiffs-respondents there was a brief by *William G. Ladewig, Sharon K. Iggens* and *Ladewig and Rechlicz,* Menomonee Falls, and oral argument by *William G. Ladewig.*

¶ 1. WILLIAM A. BABLITCH, J. Farmers Insurance Exchange (Farmers) petitions this court to

review a decision of the court of appeals which held that, in this underinsured motorist claim, the date of the accident is not necessarily the date of loss for purposes of seeking coverage under the insurance contract within the statute of limitations. Here, Karen and Lance Yocherer did not make a claim against their underinsured carrier, Farmers, until all claims against the tortfeasors were settled and their carrier terminated arbitration proceedings against them. The court of appeals concluded that the action was timely filed, measuring from the date of termination of the arbitration. We agree that the action was commenced within the statute of limitations, but we conclude the appropriate date of loss was the date of settlement with the tortfeasors. For actions seeking coverage under an underinsured motorist policy, the statute of limitations begins to run from the date of loss, which is the date on which a final resolution is reached in the underlying claim against the tortfeasor, be it through denial of that claim, settlement, judgment, execution of releases, or other form of resolution, whichever is the latest. Accordingly, we affirm.

## I

¶ 2. On October 22, 1987, Karen Yocherer was injured in an automobile accident caused by the alleged negligence of two other drivers, Katherine Noyes and Jeffrey Barnes. At that time, Yocherer was insured under an automobile insurance policy issued by Farmers, which contained an underinsured motorist coverage provision.[1] Barnes was also insured by Farmers. Noyes was insured by American Family.

---

[1] The terms of the uninsured/underinsured motorist insurance coverage were as follows:

¶ 3. On February 16, 1995, Yocherer settled her claims against Barnes and Noyes and reserved any claims she might have under her own underinsured motorist policy with Farmers. She then conducted settlement negotiations with Farmers that proved unsuccessful. Pursuant to the policy, the parties then commenced arbitration proceedings. On February 12, 1997, almost nine and one-half years after the accident, Farmers terminated the arbitration process and advised her that the statute of limitations under Wis. Stat. § 893.43 (1997–98)[2] had expired. This statute requires that an action upon a contract be commenced within six years after the cause of action accrues.

¶ 4. On May 16, 1997, Karen and Lance Yocherer (Yocherers) filed a complaint against Farmers in Washington County Circuit Court. The Yocherers alleged claims of bad faith, breach of contract, declaratory relief, and estoppel. Farmers answered and asserted affirmative defenses based on the statute of limitations, estoppel, and laches.

Coverage C – Uninsured Motorist Coverage (Including Underinsured Motorists Coverage):

We will pay all sums which an insured person is legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle because of bodily injury sustained by the insured person. The bodily injury must be caused by accident and arise out of the ownership, maintenance or use of the uninsured motor vehicle.

Determination as to whether an insured person is legally entitled to recover damages or the amount of damages shall be made by agreement between the insured person and us. If no agreement is reached, the decision will be made by arbitration.

[2] All subsequent references to the Wisconsin Statutes are to the 1997–98 version unless otherwise indicated.

¶ 5. Farmers then moved for dismissal. Farmers argued that the statute of limitations under Wis. Stat. § 893.43 barred the Yocherers' action. It contended that the Yocherers' rights under their underinsured motorist coverage accrued upon the injury, that is the date of the accident, at which time there was a presentable claim even though no breach of contract. As a result, the Yocherers' action was untimely because it was brought more than nine years after the date of the accident. Farmers also argued that the doctrines of laches and equitable estoppel barred the Yocherers' action.

¶ 6. In response, the Yocherers argued that the statute of limitations commenced on February 12, 1997, the date on which Farmers allegedly breached the insurance contract by terminating the arbitration proceedings. The Yocherers argued that, until Farmers effectively denied the requested underinsured motorist benefits, they did not have a viable claim for breach of contract. They also argued that the doctrines of laches and equitable estoppel did not apply because again, before February 12, 1997, there was no indication that Farmers had breached the insurance policy contract by refusing to pay underinsured motorist coverage benefits. Therefore, their action was timely filed.

¶ 7. The circuit court, the Honorable Leo Schlaefer presiding, denied Farmers' motion to dismiss. The court noted that neither party disputed that the underinsured claim was in contract and that the six-year statute of limitations applied. Therefore, the only question was when the statute of limitations commenced. The court recognized the concerns of Farmers, stating that, if the date of loss was not the date of accident, delays could theoretically occur in asserting and resolving underinsured motorist coverage claims.

119

Nevertheless, the court relied on *Abraham v. General Casualty Co.*, 217 Wis. 2d 294, 576 N.W.2d 46 (1998), and held that a contract cause of action accrued at the time that the contract was breached, which in this case was the time at which Farmers terminated the arbitration proceedings. The court found no basis for Farmers' laches or equitable estoppel claims, concluding that the record lacked any showing that Farmers breached any insurance policy contract prior to February 12, 1997. The court then ordered the parties to proceed with arbitration, and the arbitrators ruled in favor of the Yocherers. The circuit court then affirmed that award and entered judgment in favor of the Yocherers. Farmers appealed.

¶ 8. The court of appeals affirmed in an unpublished opinion. Like the circuit court, the court of appeals relied on *Abraham*. The court of appeals concluded that *Abraham* unequivocally stated that a breach of contract occurs when the insurer denies underinsured motorist benefits requested from an insured. Based on this conclusion, the court held that Farmers had breached its contract when it advised Karen Yocherer on February 12, 1997, that it would no longer consider her claim because the statute of limitations had expired. The statute of limitations, the court concluded, began running on that date. As a result, the Yocherers' breach of contract action against Farmers was commenced within the six-year statute of limitations under Wis. Stat. § 893.43.

## II

¶ 9.  We address two issues. First, we examine whether the Yocherers' action was timely filed under Wis. Stat. § 893.43. Second, we examine whether the action is barred under the doctrines of laches and equitable estoppel.

### A. Statute of Limitations

■

¶ 10.  The parties do not dispute that the applicable statute of limitations is Wis. Stat. § 893.43, which states that "[a]n action upon any contract . . . shall be commenced within 6 years after the cause of action accrues or be barred." Thus, as the court of appeals recognized, the issue is when does a cause of action accrue against an underinsured motorist carrier for coverage under the policy. This question requires that we interpret both the statute and the insurance policy, which are questions of law that we decide de novo. *Magyar v. Physicians Ins. Co.*, 2001 WI 41, ¶ 8, 242 Wis. 2d 491, 625 N.W.2d 291.

¶ 11.  Farmers asserts that the decisions from the circuit court and the court of appeals both ignore the longstanding rule established prior to *Abraham* that, when the contract involved is an insurance policy, a cause of action on the policy accrues on the date of loss for purposes of Wis. Stat. § 893.43. Farmers specifically relies on *Gamma Tau Educational Foundation v. Ohio Casualty Insurance Co.*, 41 Wis. 2d 675, 680, 165 N.W.2d 135 (1969). Farmers argues that the date of the loss in Yocherers' case was, pursuant to the language of the policy, the date of the accident. Our holding in *Abraham,* Farmers contends, should not and cannot be read as overruling this longstanding rule. If it must be read

in this manner, Farmers asks us to overrule *Abraham* because the rule of law under *Abraham* makes bad law, violates common sense, and contravenes the public policy and legislative intent expressed in the statute of limitations.

¶ 12.   *Gamma Tau* involved an action brought under a general liability policy. Specifically, the insured chapter house of a fraternity brought an action on an insurance policy seeking recovery for damages sustained after an employee of the chapter embezzled $12,000. *Gamma Tau,* 41 Wis. 2d at 677–78. The policy protected the chapter house against " 'loss of money, securities and other property which the insured shall sustain through any fraudulent or dishonest act or acts committed by any of the employees.' " *Id.* at 678. This court examined whether the action was timely commenced under the applicable statute of limitations, which, like here, provided for a six-year period within which to bring an action upon a contract. *Id.* at 680. We noted that "[t]he general rule is that the right of action of the insured accrues against the insurer on the date of the loss." *Id.* (citing *Rock County Sav. & Trust Co. v. London Assurance Co.,* 17 Wis. 2d 618, 620, 117 N.W.2d 676 (1962)). We concluded that the action was untimely, measuring from the date that the employee's thefts occurred. *Id.* at 680, 684. In other words, we concluded that the date of the loss—the date of the last known theft—controlled. In the process, we rejected the plaintiff's claims that the statute of limitations should be measured from the date of the discovery of the employee's thefts or from the date of the discovery of the policy. *Id.* at 680–83. We also rejected the plaintiff's argument that the statute of limitations did not begin to run until all the conditions precedent to the commencement of a suit had been met. *Id.* at 681–82.

¶ 13. In *Effert v. Heritage Mutual Insurance Co.,* 160 Wis. 2d 520, 527, 466 N.W.2d 660 (Ct. App. 1990), the court of appeals addressed a statute of limitations question involving an uninsured motorist policy. In that case, Effert was involved in an automobile accident with another driver. *Id.* at 523. Effert settled a claim with her insurer for personal property damage and then commenced an action against the owner of the other vehicle and his insurer for damages sustained as a result of the accident. *Id.* After learning that the owner's insurer was insolvent, Effert then submitted a claim with her insurer under the uninsured motorist provision of her policy. *Id.* After some negotiation, Effert's insurer advised her that it would no longer consider her claim because the six-year statute of limitations had expired. *Id.* Effert made a written demand to the owner's insurer for arbitration, but it refused and the circuit court dismissed Effert's action to compel the owner's insurer to arbitrate. *Id.* at 523–24.

¶ 14. The issue was "when the statute of limitations commenced on Effert's claim arising under the uninsured motorist provisions of her insurance contract." *Id.* at 524. The court rejected the argument that the statute of limitations, as it applied to Effert's insurer, began to run on the date of the accident. *Id.* at 525. The court then noted as follows:

> We perceive two distinct and conflicting approaches to determining when the statute of limitations commenced. *Under basic contract analysis, the cause of action accrued and the statute began to run when Heritage [Effert's insurer] breached the contract by* refusing to arbitrate Effert's claim [in 1990]. However, *there is also support for the proposition that the statute of limitations begins to run on an insurance action when the insured first has a claim against the insurer.* Under this latter analysis, Effert first had a claim

against Heritage when Iowa [the owner's insurer] became insolvent in 1985. *Because under either analysis no statute of limitations bars Effert's claim, it is unnecessary to decide which is the correct analysis.*

Turning first to contract, we note that a contract claim arises when the contract is breached. *Segall v. Hurwitz,* 114 Wis. 2d 471, 490, 339 N.W.2d 333, 343, (Ct. App. 1983). Heritage breached the insurance contract when it refused to arbitrate Effert's claim as required under the insurance contract. Under contract analysis this conduct commenced the statute of limitations because it was then that Heritage refused to comply with the terms of the insurance contract with Effert.

. . . .

[Alternatively, i]n *Gamma Tau Educ. Found. v. Ohio Cas. Ins. Co.,* 41 Wis. 2d 675, 680, 165 N.W.2d 135, 137, (1969), the court held that the insured's right of action against the insurer accrued on the date of loss. *We read that case to mean that the cause of action accrued when the insured first had a claim against the insurer.* We make this interpretation because a cause of action accrues when there is a claim capable of present enforcement. *Les Moise,* 122 Wis. 2d at 57, 361 N.W.2d at 656. In *Gamma Tau,* the date of loss marked when the insured could submit a claim to the insurer. In the present case, Effert could not have sought recovery from Heritage until Iowa became insolvent because no claim under the uninsured motorist coverage had yet accrued. *We therefore read "date of loss" to be when a presentable claim existed.* In many cases these dates will be contemporaneous, but in this case they are different.

*Id.* at 525, 527 (emphases added). *Effert* recognized that the *Gamma Tau* date of loss requirement did not

necessarily mean the date of the accident. Instead, the date of loss meant the date on which a claim may be brought.

¶ 15. In *Abraham,* we examined a similar statute of limitations question for an underinsured motorist policy. Abraham was injured when he was struck by an automobile while riding his bicycle. *Abraham,* 217 Wis. 2d at 297–98. At that time, Abraham was insured under an underinsured automobile insurance policy by General Casualty. *Id.* at 298. The policy stated that General Casualty agreed to pay underinsured motorist coverage only after the limits of any applicable liability policy had been exhausted by payment of judgment or settlement. *Id.* After negotiating with the tortfeasor's insurer (State Farm), Abraham notified General Casualty in a September 25, 1990 letter that he intended to settle for the full amount of the tortfeasor's liability policy and to seek no-fault liability benefits from State Farm. *Id.* In this same letter, Abraham asked his insurer to pay State Farm's liability policy limits and the no-fault benefits. *Id.* Approximately two weeks later, on October 8, 1990, General Casualty sent a letter to Abraham refusing to pay State Farm's policy limits and granted permission for Abraham to accept the policy limits provided by State Farm. *Id.* at 298–99. General Casualty then refused to pay Abraham's underinsured motorist benefits, which prompted Abraham to commence an action against General Casualty on September 30, 1994. *Id.* at 299. The action sought a judgment declaring that the policy provided underinsured motorist coverage and an order requiring General Casualty to arbitrate in good faith. *Id.*

¶ 16. General Casualty moved to dismiss arguing that the applicable statute of limitations had expired. *Id.* Specifically, it alleged that Abraham's lawsuit was a

125

"foreign cause of action" within the meaning of Wisconsin's borrowing statute and that Florida's five-year statute of limitations for actions upon contract should therefore apply to render Abraham's suit untimely. *Id.* We concluded, however, that the borrowing statute did not apply to Abraham's claim, and we therefore examined Wis. Stat. § 893.43 (1993–94) to determine whether the action was timely commenced. *Id.* at 313. We concluded as follows:

> As mentioned above, the alleged breach of contract by General Casualty occurred at the earliest in October 1990. Abraham subsequently filed his claim on September 30, 1994. Therefore, Abraham's action falls well within the six-year period provided under Wisconsin law, *see CLL Assocs. Ltd. Partnership v. Arrowhead Pacific Corp.,* 174 Wis. 2d 604, 607, 497 N.W.2d 115 (1993) (holding that a contract cause of action under Wis. Stat. § 893.43 accrues at the moment the contract is breached), and his cause of action for breach of contract may proceed accordingly.

*Id.*

¶ 17. *Abraham* did not overrule the existing rule of law for insurance policies, i.e., that the date of the loss controls. Although *Abraham*'s reliance on *CLL Associates,* which involved a claim on a construction contract not an underinsured motorist policy, may have been misplaced, the court pointed to the correct date on which the statute of limitations began to run. That date was the date of the loss, that is, the date on which a presentable claim existed for Abraham against his insurer. For claims seeking underinsured motorist coverage, the date on which a presentable claim exists is the date on which the insured resolves his or her claims against the tortfeasors, whether it was by settlement or judgment or another form of final resolution. In *Abra-*

126

*ham,* no formal settlement or judgment was entered. However, in its October 1990 letter, General Casualty implicitly recognized a settlement by granting Abraham permission to accept State Farm's policy limits. Thus, the earliest date that Abraham may have had a presentable claim was on that date, which still would have been within the statute of limitations.

■

¶ 18.    Farmers argues that the date of loss was the date of the accident because the Yocherers could have taken immediate action on their policy for uninsured motorist coverage for the damages sustained by both Noyes and Barnes. Farmers contends that the existence of other insured motorists did not preclude the Yocherers from making a claim for uninsured motorist coverage and that the Yocherers did not have to show that there was no other available liability insurance to collect on their uninsured motorist policy.

¶ 19.    It also points to the following policy language:

Additional Definitions Used In This Part Only

As used in this part:

. . .

3. Uninsured motor vehicle means a motor vehicle which is:

. . .

b. Insured by a bodily injury liability . . . policy at the time of the accident which provides coverage in amounts less than the limits of Uninsured Motorist Coverage shown in the Declarations.

Farmers argues that underinsured motor vehicles are included under this definition and asserts that, as of the

date of the accident, both tortfeasors' vehicles were underinsured motor vehicles under this definition because the Yocherers knew that their damages would exceed the tortfeasors' insurance coverage. In turn, Farmers contends that the Yocherers had an immediate right and cause of action on the underinsured motorist policy following the accident.

¶ 20.   We do not construe the policy language cited by Farmers as requiring this action to be commenced on the date of the accident. The language does not specifically require the filing of a claim at the time of the accident. Further, the facts, as they were presented at the time of the accident, did not lend themselves to a presentable claim. An insured should not be required to proceed at the time of the accident under his or her underinsured motorist policy without any knowledge of the underlying tortfeasors' liability or coverage or the insured's own potential contributory negligence. For these reasons, we conclude that the cause of action in this case appropriately accrued on the date on which there was a presentable claim, which was the date of the settlement.[3]

---

[3] Attention must be paid to the language of the policy. We note that other policies have specifically required either judgment or settlement of underlying liability policies before coverage will be provided. *See Danbeck v. American Family Mut. Ins. Co.,* 2001 WI 91, ¶ 3, 245 Wis. 2d 186, 629 N.W.2d 150. Such language provides a clear indication of when the policy comes into play and when a presentable claim exists for the insured. The record contains a policy endorsement containing such language; however, the endorsement is dated March 1992, well after the date of the accident in 1987. For this reason, we do not consider it.

¶ 21. In this case, the Yocherers are specifically seeking benefits under their underinsured motorist provision of their policy. Under this insurance provision, it must first be determined whether underinsured coverage even comes into play. To do this, it must be determined whether the insured is entitled to recover damages from the tortfeasor and whether the bodily injuries sustained by the insured arose out of the ownership, maintenance, or use of the tortfeasor's vehicle. Then it must be determined whether the insurance of the tortfeasor is insufficient to cover the loss. Thus, the cause of action appropriately accrues at the time when there has been final resolution to the underlying tort claim.

¶ 22. We hold that the date of loss for actions seeking coverage for underinsured motorist coverage is the date on which there has been a final resolution of the underlying claim with the tortfeasor, be it through denial of the claim, settlement, judgment, execution of releases, or other form of resolution. The date of settlement or judgment as the date of loss has been regarded as the fair rule of law. Specifically, it has been stated that:

> Waiting until the point of settlement seems to balance the equities concerned by protecting insurance companies against stale claims, while satisfying the insurance carriers' desire to insure that all other avenues of recovery are exhausted before they become entangled in the issue. It also gives insureds a reasonable opportunity to assess their claim.

Jeffery A. Kelso and Matthew R. Drevlow, *When Does the Clock Start Ticking? A Primer on Statutory and Contractual Time Limitation Issues Involved in Uninsured and Underinsured Motorist Claims,* 47 Drake L.

Rev. 689, 696 (1999). We agree with this reasoning. Applying this standard to the current case shows that it was clearly within the statute of limitations: the date that the settlement was reached was on February 16, 1995 and the current action was commended on May 16, 1997, clearly within the six-year statute of limitations.

## B. Laches and Equitable Estoppel

¶ 23. We next review whether the doctrines of laches or equitable estoppel bar the action in this case. Farmers correctly contends that, under the doctrine of laches, if there is unreasonable delay, knowledge of the course of events and acquiescence therein, together with prejudice to the party asserting the defense, a claim is barred. *Paterson v. Paterson*, 73 Wis. 2d 150, 153, 242 N.W.2d 907 (1976). Farmers bears the burden of showing that it was prejudiced by the delay. *Schultz v. Kuerschner*, 1 Wis. 2d 509, 516, 85 N.W.2d 500 (1957). Farmers cites generally to the history of this case to support its argument that the doctrine applies. Specifically, it points to the formal pleading filed against the tortfeasors in which the Yocherers identified that their damages exceeded the liability coverage. Farmers asserts that this shows that the Yocherers knew they had a presentable claim for underinsured motorist coverage during this time but did not take action on it. Further, it contends that, because almost 10 years passed between the time of the accident and the filing of the action, there is significant prejudice to them in this case.

¶ 24. We, however, agree with the circuit court and the court of appeals that, under the facts of this case, the doctrine does not apply because there is no evidence of unreasonable delay on the part of the Yocherers. During the nine year period, the Yocherers informed Farmers that a claim against it would be taken at some point. Further, Farmers was part of the underlying tort action the entire time. Therefore, we conclude that Farmers failed to meet its burden in showing prejudice. In addition, the Yocherers' decision to proceed with arbitration first, and then, at the conclusion of the arbitration, file an action against Farmers, constituted neither error nor delay.

¶ 25. The doctrine of equitable estoppel "consists of action or nonaction on the part of the one against whom the estoppel is asserted which induces reliance thereon by another, either in the form of action or nonaction, to his detriment." *City of Milwaukee v. Milwaukee County,* 27 Wis. 2d 53, 66, 133 N.W.2d 393 (1965). Again, Farmers bears the burden of proving each element by clear and convincing evidence. *St. Paul Ramsey Med. Ctr. v. DHSS,* 186 Wis. 2d 37, 47, 519 N.W.2d 681 (Ct. App. 1994). In short, this doctrine does not apply in this case because Farmers has failed to meet its burden by providing facts to show that it relied upon any actions of the Yocherers to its detriment. We again agree with the circuit court and the court of appeals that this claim is without merit.

### III

¶ 26. In sum, we conclude that, under the facts of this case, the date of settlement was the appropriate date of loss for statute of limitations purposes. Using

this date, we conclude that the Yocherers' action was timely filed. Thus, we affirm the court of appeals' decision that the Yocherers' action was commenced within the six-year statute of limitations under Wis. Stat. § 893.43. The doctrines of laches and equitable estoppel do not apply.

*By the Court.*—The decision of the court of appeals is affirmed.