COURT OF APPEALS
DECISION
DATED AND FILED

November 7, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal Nos.** 2023AP2215
2024AP120

Cir. Ct. No. 2022CV1444

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT IV

---

MARKET SQUARE ASSOCIATES, LLC,

PLAINTIFF-APPELLANT,

V.

NORMANDY SQUARE, LLC AND
NORMANDY SQUARE CONDOMINIUM ASSOCIATION,

DEFENDANTS-THIRD-PARTY PLAINTIFFS-RESPONDENTS,

V.

MARKET SQUARE, LLC AND RICHARD DOHM,

THIRD-PARTY DEFENDANTS.

---

APPEALS from orders of the circuit court for Dane County: RHONDA L. LANFORD, Judge. *Affirmed in part; reversed in part and cause remanded.*

Before Kloppenburg, P.J., Blanchard, and Graham, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM. In these consolidated appeals, Market Square Associates, LLC ("MSA") appeals two circuit court orders. MSA appeals the court's order granting summary judgment to Normandy Square, LLC and Normandy Square Condominium Association (collectively, "Normandy"), dismissing MSA's claim that Normandy breached an Easement Agreement (generally, the "Agreement") that required Normandy to reimburse MSA for a proportion of the costs that MSA incurred in maintaining the "[e]asement [a]rea" created by the Agreement. MSA also appeals the court's denial of MSA's motion for reconsideration.

¶2    MSA's claim arises out of a 2007 Easement Agreement that creates an "[e]asement [a]rea" that consists of three "ingress and egress easements" (which amount to driving and walking lanes) that run across three lots (Lot 1, Lot 2, and Lot 3) at the Market Square Shopping Center. The Agreement makes the owner of Lot 2 responsible for maintaining the easement area and provides that the owner of Lot 1 and the owner of Lot 3 must each reimburse the owner of Lot 2 for one-third of the easement area maintenance costs incurred by the owner of

Lot 2.[1] MSA has owned Lot 2 and Lot 3 since at least 2008. MSA alleges that it is entitled to reimbursement by the owner of Lot 1 for Lot 1's proportionate share of the easement area maintenance costs that MSA has incurred.

¶3 Normandy purchased Lot 1 in 2018 from Market Square, LLC ("the LLC"), which had owned Lot 1 since at least the time when the 2007 Agreement was recorded. MSA sent invoices to Normandy for Lot 1's proportionate share of the easement area maintenance costs incurred by MSA between 2008 and 2018. Normandy did not pay these invoices, and in 2022, MSA filed this action alleging breach of easement.

¶4 The circuit court granted Normandy's motion for summary judgment dismissing MSA's claim. The court determined that MSA's claim for Lot 1's proportionate share of the easement area maintenance costs that MSA incurred before June 2016 is barred by the six-year limitations period that applies to actions to enforce contracts and other obligations. As for the easement area maintenance costs that MSA incurred after June 2016, the court determined that MSA waived its right to collect Lot 1's proportionate share for that period by entering into a 2013 Parking Lot Lease Agreement (generally, the "Lease") with the prior owner of Lot 1, the LLC.

¶5 MSA argues on appeal that Normandy is not entitled to summary judgment dismissing MSA's claim. Specifically, MSA argues that its claim is timely because it is subject only to the forty-year limitations period that applies to

---

[1] For ease of reading, we generally use the terminology that is found in the 2007 Easement Agreement: "easement area," "easement area maintenance," and "proportionate share of the easement area maintenance costs."

3

actions to enforce easements. In the alternative, MSA argues that, if the six-year limitations period applies, its claim is still timely because it did not accrue until late 2017 when MSA demanded payment from Normandy and Normandy refused to pay. Separately, MSA argues that the Lease is not a defense to Normandy's obligation to pay Lot 1's proportionate share of the easement area maintenance costs under the Agreement. In the alternative, MSA argues that summary judgment is not appropriate because there are genuine issues of material fact regarding the Lease's effect on the lot owners' obligations for the easement area maintenance costs under the Agreement.

¶6      We need not resolve the parties' dispute about which limitations period applies, because we conclude that MSA's claim did not accrue for purposes of the six-year limitations period until the easement agreement was breached in 2017 and the forty-year limitations period has not yet elapsed. Therefore, the claim is not barred under either of the two limitations periods argued by the parties. Separately, we conclude that, based on the summary judgment materials, the only reasonable interpretation of the language in the Lease is that, in entering into the Lease, MSA assumed sole responsibility for undertaking and paying for the maintenance of Lot 1, which includes the easement area on Lot 1. Accordingly, the Lease is a defense to MSA's claim for reimbursement of Lot 1's proportionate share of the easement area maintenance costs under the Agreement from 2012 to 2018, when the Lease was in effect. Consequently, Normandy is entitled to summary judgment dismissing MSA's claim alleging breach of easement for Normandy's failure to pay MSA's invoices for Lot 1's proportionate share of the easement area maintenance costs that MSA incurred between 2012 and 2018, but Normandy is not entitled to summary judgment dismissing MSA's claim for Lot 1's proportionate share of the easement area maintenance costs that

MSA incurred prior to 2012.[2]  Accordingly, we affirm in part, reverse in part, and remand this case to the circuit court.

## BACKGROUND

¶7     The following material facts are undisputed for the purposes of summary judgment, except as otherwise indicated.

¶8     In 2007, the LLC owned a parcel of land fronting Odana Road and Yellowstone Drive on the west side of Madison, referred to by the parties as the Market Square Shopping Center.  On October 10, 2007, the LLC recorded Certified Survey Map No. 12279, which divided the Market Square Shopping Center into three contiguous parcels, identified on the map as Lot 1, Lot 2, and Lot 3.  On that same day, the LLC recorded an Easement Agreement that "create[s] ingress and egress easements for the benefit of Lot 1, Lot 2 and Lot 3, their successors and assigns in, through and over the approximately Thirty Thousand Seven Hundred and Eleven (30,711) square foot area of the Market Square Parcels depicted on the attached Exhibit B."[3]  The Agreement refers to the ingress and egress easements collectively as the "Easement Area."

¶9     Specifically, the Agreement provides that:  the owner of Lot 1 grants a "perpetual, nonexclusive easement appurtenant to Lot 2 and Lot 3 over, under

---

[2] Because we affirm in part and reverse in part the circuit court's decision granting Normandy's motion for summary judgment on our de novo review, we do not separately address its decision denying MSA's motion for reconsideration, but that order is reversed in part based on our discussion in this opinion.  *See* ***Kraft v. Steinhafel***, 2015 WI App 62, ¶27, 364 Wis. 2d 672, 869 N.W.2d 506 ("Because we reverse the circuit court's grant of summary judgment[], we need not address separately the court's denial of Kraft's motion for reconsideration.").

[3] No document marked as Exhibit B is attached to the Agreement in the record, but MSA and Normandy agree that an unmarked page attached to the Agreement depicts the easement area.

and across that portion of the Easement Area which is located on Lot 1 for vehicular and pedestrian ingress and egress to and from the public streets" (the "Lot 1 Easement"); the owner of Lot 2 grants the same to Lots 1 and 3 as to the portion of the easement area that is located on Lot 2 (the "Lot 2 Easement"); and the owner of Lot 3 grants the same to Lots 1 and 2 as to the portion of the easement area that is located on Lot 3 (the "Lot 3 Easement"). The diagram attached to the Agreement depicting the easement area shows that the easement area consists of two private driving lanes that intersect in a T, with accompanying walking lanes.

¶10     The Agreement provides the following with regard to the responsibilities of the parties related to easement area maintenance. The owner of Lot 2 is responsible for arranging for the "repair, maintenance and general upkeep" of the easement area. The owner of each lot is responsible for one-third (the "proportionate share") of the easement area maintenance costs, respectively. The owners of Lots 1 and 3 must pay their respective proportionate shares to the owner of Lot 2 within thirty days of receiving an invoice from the owner of Lot 2 for their proportionate shares of the easement area maintenance costs.

¶11     Shortly after the Agreement was executed, the LLC sold Lots 2 and 3 to MSA. The LLC retained ownership of Lot 1, which at all times relevant to this appeal included a parking lot and a portion of the driving and walking lanes in the easement area.

¶12     In February 2013, the LLC and MSA entered into the Lease (a written Parking Lot Lease Agreement), which provides for the LLC to lease Lot 1 ("the Premises") to MSA for a three-year term from January 2012 through December 2014, with the term being automatically extended each year until either

6

party terminates the Lease.[4]  The Lease was extended until Normandy purchased Lot 1 in July 2018, when it was terminated by the LLC.  The Lease makes MSA "responsible at its sole cost and expense for all necessary maintenance, repairs and replacement of the Premises" and provides that the LLC "does not have any maintenance, repair, or improvement responsibilities or duties with respect to the Premises of any kind or nature."  The Lease does not explicitly address the provision in the Agreement pertaining to the obligation of the owner of Lot 1 and the owner of Lot 3 to each pay its proportionate share of the easement area maintenance costs to the owner of Lot 2.

¶13   From 2008 through July 2018, MSA paid for the easement area maintenance, including snow removal, asphalt repairs, and lighting replacement, as required by the Agreement.  MSA did not send any invoices to the LLC for Lot 1's proportionate share of the easement area maintenance costs before November 2017.  In November 2017, MSA learned that the LLC was in the process of selling Lot 1 to Normandy.  MSA sent to Normandy an invoice and itemization of Lot 1's proportionate share of the easement area maintenance costs from 2008 through October 2017.[5]  Normandy did not pay the November 2017 invoice or an updated invoice that included Lot 1's proportionate share of the costs incurred through July 2018.

---

[4] The parties dispute whether the Lease applies only to the parking lot on Lot 1, or to the parking lot and the portion of the easement area on Lot 1.  We address this dispute in the discussion section below.

[5] The parties dispute whether MSA sent to the LLC a copy of the invoice that MSA submitted to Normandy in November 2017.  This dispute is not material to the issues raised on appeal, and we address it no further.

¶14 On June 14, 2022, MSA filed this action against Normandy, alleging breach of easement and seeking payment of Lot 1's proportionate share of the easement area maintenance costs, together with interest.[6] Normandy moved for summary judgment dismissing MSA's claims, arguing that: (1) MSA's claim for Lot 1's proportionate share of the easement area maintenance costs that MSA incurred before June 2016 is barred by the six-year statute of limitations for the enforcement of contracts and other obligations, WIS. STAT. § 893.43(1) (2021-22); and (2) MSA's claim for Lot 1's proportionate share of the easement area maintenance costs incurred when the Lease was in effect is barred because the Lease provides a defense to the Lot 1 owner's obligation to pay Lot 1's proportionate share of the easement area maintenance costs under the Agreement.[7]

¶15 In opposing Normandy's motion for summary judgment, MSA argued that the forty-year limitations period for the enforcement of easements, WIS. STAT. § 893.33(6), applies to its claim. In the alternative, MSA argued that its cause of action did not accrue until thirty days after MSA sent the November 2017 invoice to Normandy, with the result that its claim is not barred by the

---

[6] MSA originally named MSP Real Estate, Inc., the developer of the real estate acquired by Normandy at the Market Square Shopping Center, as defendant. MSA twice amended the complaint to name Normandy Square Condominium Association and Normandy Square, LLC as defendants and to remove MSP Real Estate, Inc. as defendant. The second amended complaint is the operative complaint for purposes of these consolidated appeals.

[7] Because of the history of the LLC's ownership of Lot 1, Normandy filed a third-party complaint against the LLC and its member Richard Dohm, alleging numerous claims based on the third-party defendants' alleged failure to pay the invoices that MSA submitted to Normandy for Lot 1's proportionate share of the easement area maintenance costs between 2008 and 2018. No issues regarding those claims were raised in the summary judgment proceedings in the circuit court, and no issues regarding those claims have been raised in these consolidated appeals. Accordingly, we do not further reference those claims.

All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

six-year limitations period. Separately, MSA argued that the Lease is not a defense to the Lot 1 owner's obligation to pay Lot 1's proportionate share of the easement area maintenance costs under the Agreement. This argument was based on averments in an affidavit by Bruce Bosben, MSA's manager, that the Lease "does not involve the easement area" and "does not assign the Lot 1 owner's easement maintenance responsibilities to a lessee."

¶16 The circuit court granted Normandy's motion for summary judgment. The court concluded that MSA's claim for Lot 1's proportionate share of the easement area maintenance costs accrued when MSA incurred the costs and, therefore, MSA's claim for the share of the costs that it incurred before June 14, 2016, is time-barred pursuant to WIS. STAT. § 893.43(1). The court also concluded that the Lease, as a matter of law, is a defense to MSA's claim for costs incurred after June 14, 2016, because the Lease makes MSA responsible for the remaining proportionate share of the easement area maintenance costs invoiced to Normandy.

¶17 MSA filed a motion for reconsideration, which the circuit court denied.

¶18 MSA appeals.[8]

---

[8] We note that Normandy's brief does not comply with WIS. STAT. RULE 809.19(8)(bm), which addresses the pagination of appellate briefs, and remind it of its obligation to comply with this rule. *See* RULE 809.19(8)(bm) (providing that, when paginating briefs, parties should use "Arabic numerals with sequential numbering starting at '1' on the cover"). This rule has recently been amended, *see* S. CT. ORDER 20-07 (eff. July 1, 2021), and the reason for the amendment is that briefs are now electronically filed in PDF format and are electronically stamped with page numbers when they are accepted for e-filing. As our supreme court explained when it amended the rule, the new pagination requirements ensure that the numbers on each page of a brief "will match ... the page header applied by the eFiling system, avoiding the confusion of having two different page numbers" on every page of a brief. S. CT. ORDER 20-07 cmt. at x1.

## DISCUSSION

¶19    MSA renews on appeal the arguments that it made in opposition to Normandy's summary judgment motion in the circuit court.  To repeat, MSA argues that the forty-year limitations period that applies to actions to enforce easements, WIS. STAT. § 893.33(6), applies to its claim for reimbursement of Lot 1's proportionate share of the easement area maintenance costs; or, in the alternative, that its claim did not accrue until thirty days after it demanded payment from Normandy in late 2017, and, therefore, that it filed its claim within the six-year limitations period that applies to actions to enforce contracts and other obligations, WIS. STAT. § 893.43(1).  Separately, MSA argues that the Lease is not a defense to the Lot 1 owner's obligation to pay its proportionate share of the easement area maintenance costs; or, in the alternative, that there are genuine issues of material fact precluding summary judgment regarding the effect of the Lease on the lot owners' obligations to pay for easement area maintenance under the Agreement.

¶20    We first state the standard of review for a motion for summary judgment.  We then interpret the relevant statutes and the Agreement to determine whether any part of MSA's claim is time-barred.  After that, we interpret the Lease to determine whether it is a valid defense to any part of MSA's claim.

### I.  Summary Judgment Standard of Review

¶21    We review a grant of summary judgment de novo.  *Bank of New York Mellon v. Klomsten*, 2018 WI App 25, ¶31, 381 Wis. 2d 218, 911 N.W.2d 364.  Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact" and a party is entitled to a

judgment as a matter of law. WIS. STAT. § 802.08(2) (summary judgment to moving party) and (6) (summary judgment to non-moving party).

## II. Whether MSA's Claim is Timely

¶22 The parties dispute whether the forty-year limitations period for the enforcement of easements in WIS. STAT. § 893.33(6), or instead the six-year limitations period for the enforcement of contracts and other obligations in WIS. STAT. § 893.43(1), applies to MSA's action.[9] However, we need not resolve this dispute because, as we explain, we conclude that MSA's claim was timely filed within both the forty-year statute of repose and the six-year statute of limitations. *See **Mnuk v. Harmony Homes, Inc.**,* 2010 WI App 102, ¶18 and n.9, 329 Wis. 2d 182, 790 N.W.2d 514 (stating that, when no action for breach had yet accrued, it was not necessary to address a party's argument that the claim was timely because the party sought to enforce an easement rather than a contract).

---

[9] WISCONSIN STAT. § 893.33(6) states: "Actions to enforce easements … set forth in any recorded instrument shall not be barred by this section for a period of 40 years after the date of recording such instrument[.]" WISCONSIN STAT. § 893.43(1) states: "[A]n action upon any contract, obligation, or liability, express or implied, … shall be commenced within 6 years after the cause of action accrues or be barred." This states a statute of limitations for the filing of a claim that is triggered by an accrual event.

While the distinction is not in itself significant to our analysis, we note that the parties misidentify WIS. STAT. § 893.33(6), which limits actions from the date of recording of an easement rather than from the date of an alleged breach, as a statute of limitations. But § 893.33(6) is properly referred to as a statute of repose, not a statute of limitations. "A statute of repose … limits the time period within which an action may be brought based on the date of an act or omission. A statute of repose does not relate to the accrual of a cause of action. In fact, it may cut off litigation *before* a cause of action arises." **Hamilton v. Hamilton**, 2003 WI 50, ¶29, 261 Wis. 2d 458, 661 N.W.2d 832 (citation omitted).

Going forward, we refer to WIS. STAT. § 893.33(6) as a statute of repose and to WIS. STAT. § 893.43(1) as a statute of limitations.

11

¶23    Recall that MSA filed this action in June 2022. The relevant date under WIS. STAT. § 893.33(6), the forty-year statute of repose for an action to enforce an easement, is "the date of recording." Sec. 893.33(6). Because the Agreement was recorded in 2007, the forty-year period had not elapsed at the time the action was filed and, therefore, MSA's claim would not be barred under § 893.33(6). The relevant date under WIS. STAT. § 893.43(1), the six-year statute of limitations for an action to enforce a contract and other obligation, is the date "the cause of action accrues," in other words, the date of breach. Sec. 893.43(1); **CLL Assocs. Ltd. P'ship v. Arrowhead Pacific Corp.**, 174 Wis. 2d 604, 607, 497 N.W.2d 115 (1993) (contract cause of action under § 893.43 accrues at the moment the contract is breached). Thus, to determine whether MSA's claim would be barred under § 893.43(1), we must determine when the claim accrued. To determine when MSA's claim accrued, we must interpret the Easement Agreement.

¶24    We review de novo the interpretation of a written easement, and we interpret an easement in much the same way that we interpret other written instruments. **Grygiel v. Monches Fish & Game Club, Inc.**, 2010 WI 93, ¶12, 328 Wis. 2d 436, 787 N.W.2d 6; **Mnuk**, 329 Wis. 2d 182, ¶24. Interpretation of a contract, including whether a breach has occurred, is a question of law that we review de novo. **Edwards v. Petrone**, 160 Wis. 2d 255, 258, 465 N.W.2d 847 (Ct. App. 1990); **Steele v. Pacesetter Motor Cars, Inc.**, 2003 WI App 242, ¶10, 267 Wis. 2d 873, 672 N.W.2d 141. When interpreting contracts, "our goal 'is to ascertain the true intentions of the parties as expressed by the contractual language.' … [T]he best indication of the parties' intent is the language of the contract[.]" **Town Bank v. City Real Est. Dev., LLC**, 2010 WI 134, ¶33, 330 Wis. 2d 340, 793 N.W.2d 476 (citations and quoted source omitted).

¶25    Here, the Agreement provides the following with respect to obligations regarding easement area maintenance:

> The owner of Lot 2 shall be responsible for the repair, maintenance and general upkeep of the Easement Area (the "Easement Area Maintenance") and shall keep the Easement Area in good order and condition. The Easement Area Maintenance shall include, but not be limited to, snow and ice removal, clearing, resurfacing, filling, pavement repair, street lighting replacement and repair and any other item of general upkeep that the owner of Lot 2 determines is reasonably necessary to maintain the Easement Area for the intended use thereof. Notwithstanding anything contained herein to the contrary, the owners of Lot 1, Lot 2 and Lot 3 shall each be responsible for thirty-three and one-third percent (33 1/3%) (the "Proportionate Share") of the cost of the Easement Area Maintenance …. The owners of Lot 1 and Lot 3 shall each reimburse the owner of Lot 2 for its Proportionate Share of the costs incurred for Easement Area Maintenance (the "Maintenance Expense"). The owners of Lot 1 and Lot 3 shall each pay the Maintenance Expense within thirty (30) days of receipt of an invoice therefor from the owner of Lot 2.

¶26    Under the terms of the Agreement, there is no breach until two events occur: the owner of Lot 2 submits an invoice to the owner of Lot 1 and the owner of Lot 1 does not pay the invoice within thirty days. Here, MSA, the owner of Lot 2, did not submit an invoice for Lot 1's proportionate share of MSA's easement area maintenance costs to Normandy, as the owner of Lot 1, until November 2017, and Normandy did not pay that invoice within thirty days. Thus, the six-year period of limitations for enforcement of a contract and other obligation had not expired when MSA filed the action in June 2022 and, accordingly, MSA's claim would not be barred by the statute of limitations governing actions to enforce contracts and other obligations.

¶27    Normandy argues that MSA's claim accrued when MSA incurred the easement area maintenance costs, not when MSA submitted the invoice. To

begin with, Normandy misstates the issue. The issue is not whether MSA's claim accrued when it submitted the invoice, but whether MSA's claim accrued when Normandy did not pay the invoice thirty days later. We now address MSA's argument, as properly stated.

¶28    In Wisconsin, "'[a] cause of action accrues [when] there exists a claim capable of present enforcement, a suable party against whom it may be enforced, and a party who has a present right to enforce it.'"[10]  *Hansen v. A.H. Robins, Inc.*, 113 Wis. 2d 550, 554, 335 N.W.2d 578 (1983) (quoted source omitted).  Normandy argues that these conditions were met at the moment that MSA incurred easement area maintenance costs. We disagree. As stated, the Agreement provides that the owner of Lot 1 and the owner of Lot 3 are each responsible for a proportionate share of the easement area maintenance costs incurred by the owner of Lot 2 (the "Maintenance Expense"), and that the owners of Lot 1 and Lot 3 "shall … pay the Maintenance Expense within thirty (30) days of receipt of an invoice therefor from the owner of Lot 2."  Under these terms, MSA was not obligated to submit an invoice at any specified time or frequency. Thus, looking to the language of the Agreement as an expression of the intent of the parties, MSA was free to choose when to submit invoices to the owner of Lot 1.  *See Town Bank*, 330 Wis. 2d 340, ¶33 ("[T]he best indication of the parties' intent is the language of the contract[.]").  When MSA did submit the invoice, the owner of Lot 1 was obligated to pay within thirty days, and only after

---

[10] The terms "cause of action" and "claim for relief" are used interchangeably and refer to the same concept. *Tikalsky v. Friedman*, 2019 WI 56, ¶14 n.9, 386 Wis. 2d 757, 928 N.W.2d 502 ("Our cases at various times have referred to 'causes of action,' 'claims for relief,' 'theories of recovery,' and 'theories of liability.'  The terms are interchangeable.").

this time passed did a breach occur. *See CLL Assocs. Ltd. P'ship*, 174 Wis. 2d at 607 (contract cause of action accrues at the moment the contract is breached).

¶29　Normandy relies on *Gamma Tau Educational Foundation v. Ohio Casualty Insurance Co.*, 41 Wis. 2d 675, 165 N.W.2d 135 (1969), for the proposition that a plaintiff cannot extend the statute of limitations by delaying its own performance of a condition precedent to the commencement of an action. That case is inapposite. In *Gamma Tau*, our supreme court was specifically concerned with whether an insured could extend the statute of limitations due to delays in the insured's performance of conditions precedent to filing a claim against its insurer. *Id.* at 681-82. The court ruled that the insured's right of action against the insurer accrued on the date of loss, which in that case marked when the insured could submit a claim to the insurer. *Id.* at 680; *see also Effert v. Heritage Mut. Ins. Co.*, 160 Wis. 2d 520, 527, 466 N.W.2d 660 (Ct. App. 1990) (interpreting the ruling in *Gamma Tau*). The language in *Gamma Tau* on which Normandy relies is as follows:

> [Gamma Tau] grounds [its] … theory upon the well accepted policy provision that 'no action' shall be brought on an insurance policy until the conditions precedent required in the policy have been performed by the claimant. This is, of course, undoubtedly true, but that *principle of insurance contract law* has nothing whatsoever to do with the statutory period within which a plaintiff must bring [a] suit…. If the plaintiff's contention were correct, a claimant *against an insurance company* could choose the time at which it elects to have the statute commence running by deferring the performance of conditions precedent until it appeared to be propitious to proceed. A rule that would permit such delay at the volition of a plaintiff would be contrary to the general policy considerations that require the prompt commencement of actions and the rapid disposition of litigation.

*Gamma Tau*, 41 Wis. 2d at 681-82 (emphasis added).

15

¶30    The few published cases that cite this language in *Gamma Tau* do so solely in the context of insurance claims.  *See, e.g.*, *Effert*, 160 Wis. 2d at 527; *Yocherer v. Farmers Ins. Exch.*, 2002 WI 41, ¶¶11-14, 252 Wis. 2d 114, 643 N.W.2d 457.  In *Yocherer*, our supreme court recognized that the rule in *Gamma Tau*, that an insured's right of action against its insurer accrues on the date of loss, means that an insured's right of action against its insurer accrues on the date on which a claim may be brought.  *Yocherer*, 252 Wis. 2d 114, ¶¶14-15.  The court further recognized that *Abraham v. General Casualty Co.*, 217 Wis. 2d 294, 576 N.W.2d 46 (1998), reaffirmed "the existing rule of law for insurance policies, i.e., that the date of the loss controls," which in *Abraham* was when the insurer refused to pay the insured's claim.  *Yocherer*, 252 Wis. 2d 114, ¶¶16-17.  Relying on *Abraham* and other insurance claim case law, the court ruled that "the date of loss for actions seeking coverage for underinsured motorist coverage is the date on which there has been a final resolution of the underlying claim with the tortfeasor."  *Yocherer*, 252 Wis. 2d 114, ¶¶17-22.  In short, the court in *Yocherer* limited *Gamma Tau* to its facts in the insurance claim context.  Normandy does not cite, and our research has not disclosed, a published case that extends the language in *Gamma Tau* addressing conditions precedent to bringing an action against an insurer for failing to pay a claim to other contexts, such as the context here involving a claim for failure to pay an invoice pursuant to an easement agreement.  Accordingly, we reject Normandy's reliance on *Gamma Tau* in this context for lack of supporting legal authority.

¶31    Normandy argues that our conclusion that the act of invoicing triggers the statute of limitations "would create absurd results" by allowing MSA to reset the statute of limitations by sending an invoice shortly before the statute of limitations expires.  We reject this argument for at least the following reasons.  To

begin with, the hypothetical is inaccurate and inapt. There is no "resetting" of the statute of limitations on the day before it "expires" under the facts of the hypothetical because the statute of limitations did not start running in the first place. Therefore, it was not set to expire.

¶32  In addition, we disagree that the hypothetical presents an absurd result. In Wisconsin, parties have wide latitude to contract, and it is the courts' role to allow the terms of a contract to be enforced, so long as the terms are not illegal. *See Rosecky v. Schissel*, 2013 WI 66, ¶¶56, 58, 349 Wis. 2d 84, 833 N.W.2d 634 ("A founding principle of freedom of contract is that 'individuals should have the power to govern their own affairs without governmental interference.' Courts protect parties' 'justifiable expectations …' by 'ensuring that the promises will be performed.'" (citation and quoted sources omitted)). Here, the LLC was free to include in the Easement Agreement a requirement that the owner of Lot 2 send invoices at a specified time or frequency. It happened that the LLC did not do so. The Agreement allows the owner of Lot 2 to submit invoices at any time and requires the owner of Lot 1 to pay within thirty days of receiving an invoice. Thus, a breach does not occur until the owner of Lot 1 does not pay within thirty days of receiving the invoice. Under the circumstances, there may be other legal doctrines, such as laches, that might bar MSA's claim for reimbursement of expenses that were incurred as early as 2008, but those doctrines were not addressed in the parties' arguments in the circuit court or on appeal. We do not take a position on the merits of any potential alternative theories not addressed by the parties.

¶33  In sum on this issue, we conclude that MSA's claim for breach of easement for Normandy's failure to pay Lot 1's proportionate share of the easement area maintenance costs did not accrue until December 2017.

17

Accordingly, because the easement was recorded in 2007 and because MSA filed its claim in the circuit court in June 2022, its action is not barred by either WIS. STAT. § 893.33(6) or WIS. STAT. § 893.43(1).

### III.  Whether the Lease Is a Defense

¶34    To summarize our analysis to this point, we have concluded that MSA's claim to enforce the payment obligation in the Agreement pursuant to its 2017 invoice for reimbursement of Lot 1's proportionate share of the easement area maintenance costs from 2008 to 2018 is not time-barred.  We now address whether the Lease is a defense to MSA's claim seeking to enforce Normandy's obligations under the Agreement, so as to require the dismissal of MSA's claim for reimbursement of Lot 1's proportionate share of the easement area maintenance costs from 2012 to 2018, when the Lease was in effect.  As we explain, we conclude that the Lease is a defense.

¶35    As stated, we review de novo the interpretation of a written easement, and we interpret an easement in much the same way that we interpret other written instruments.  *Grygiel*, 328 Wis. 2d 436, ¶12; *Mnuk*, 329 Wis. 2d 182, ¶24.  We also review de novo the interpretation of a lease, as we do other contracts, including whether the lease is ambiguous.  *Borchardt v. Wilk*, 156 Wis. 2d 420, 427, 456 N.W.2d 653 (Ct. App. 1990); *see Foursquare Props. Joint Venture I v. Johnny's Loaf & Stein, Ltd.*, 116 Wis. 2d 679, 681, 343 N.W.2d 126 (Ct. App. 1983) (leases are contracts that are reviewed de novo).  "A contract provision is ambiguous if it is 'susceptible of more than one reasonable interpretation.'"  *Ripp Distrib. Co. v. Ruby Distrib. LLC*, 2024 WI App 24, ¶29, 411 Wis. 2d 630, 5 N.W.3d 930 (quoting *Town Bank*, 330 Wis. 2d 340, ¶33).  When interpreting contracts, "our goal 'is to ascertain the true intentions of the

parties as expressed by the contractual language.' … [T]he best indication of the parties' intent is the language of the contract[.]" ***Town Bank***, 330 Wis. 2d 340, ¶33 (citations and quoted source omitted). "[S]ummary judgment should not be granted when the contract is ambiguous and the intent of the parties to the contract is in dispute." ***Energy Complexes, Inc. v. Eau Claire Cnty.***, 152 Wis. 2d 453, 467, 449 N.W.2d 35 (1989).

*Additional Background*

¶36    The Lease provides that the LLC as landlord leases to MSA as tenant "the Premises" as "depicted on Exhibit A." The Lease provides the following with respect to the respective maintenance obligations of tenant MSA and landlord the LLC for "the Premises":

> The Tenant shall be responsible at its sole cost and expense for all necessary maintenance, repairs and replacement of the Premises to keep the Premises in good and sound condition including, but not limited to, snow removal, resurfacing or painting of the parking lot, filling pot holes, sealing, lighting and landscaping (the "Maintenance Activities").... The Landlord does not have any maintenance, repair, or improvement responsibilities or duties with respect to the Premises of any kind or nature.

¶37    MSA argues that: (1) the term "Premises" in the Lease refers to the parking lot area of Lot 1 only, and not to the portion of the easement area located on Lot 1; and (2) assignment of the "Maintenance Activities" to MSA in the Lease requires MSA to maintain at its sole expense only the parking lot area located on Lot 1, excluding the portion of the easement area that is also on Lot 1, and does not alter the Lot 1 owner's obligation under the Agreement to pay Lot 1's proportionate share of the easement area maintenance costs. As we now explain, we conclude that the term "Premises" in the Lease unambiguously applies to the parking lot and the portion of the easement area on Lot 1. We also conclude that

the only reasonable interpretation of the language assigning "Maintenance Activities" to MSA is that, in entering into the Lease, MSA assumed sole responsibility for undertaking and paying for the maintenance of Lot 1, which includes the easement area on Lot 1. Accordingly, the Lease is a defense to MSA's claim for reimbursement of Lot 1's proportionate share of the easement area maintenance costs under the Agreement from 2012 to 2018, when the Lease was in effect, and, therefore, that portion of MSA's claim was properly dismissed. We address these propositions in turn.

### 1. *"Premises"*

¶38 To repeat, the Lease states that MSA "shall be responsible at its sole cost and expense for all necessary maintenance, repairs and replacement of *the Premises* to keep *the Premises* in good and sound condition." (Emphasis added.) Page 1 of the Lease states that the "Premises" are "depicted on Exhibit A," and Exhibit A states: "DEPICTION OF THE PREMISES[:] Lot 1 of Certified Survey Map No. 12279 …." Applying a plain meaning interpretation to these statements taken together, we conclude that the term "Premises" unambiguously includes all of Lot 1 as depicted on Certified Survey Map No. 12279. *See **Town Bank***, 330 Wis. 2d 340, ¶33 (intentions of the parties are ascertained from the plain meaning of the text when such a plain meaning is ascertainable). That map depicts Lot 1 as including the parking lot and the easement area that is located on Lot 1.

¶39 MSA argues that the Lease's use of the term "depict" when referring to the Premises indicates that it is referring to an image, *see Depict*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/depict ("to represent by or as if by picture") (last visited Nov. 4, 2024), and that the fact that the map referenced in Exhibit A does not explicitly refer to the easement area creates an

ambiguity as to the parties' intent to include the easement area in the Premises. This argument is unpersuasive. It is true that Certified Survey Map No. 12279 does not explicitly reference the easement area. Nevertheless, it is undisputed that Lot 1 as depicted on that map encompasses the portion of the easement area located on Lot 1. Therefore, even accepting MSA's argument that the "depicted" language indicates that we must look to the map itself for a depiction of what property the Lease covers, this does not create a genuine issue of material fact because the map shows Lot 1 as including the parking lot and portion of the easement area located on Lot 1. Thus, the "Premises" to which the Lease applies unambiguously include the portion of the easement area located on Lot 1. *See Raasch v. City of Milwaukee*, 2008 WI App 54, ¶11, 310 Wis. 2d 230, 750 N.W.2d 492 ("'A court may not depart from the plain meaning of a contract where it is free from ambiguity.'" (quoted source omitted)).

¶40    MSA also argues that other language in the Lease shows that the parties intended the Lease to apply only to the parking lot on Lot 1, and not to the portion of the easement area also located on Lot 1. *See Whirlpool Corp. v. Ziebert*, 197 Wis. 2d 144, 154, 539 N.W.2d 883 (1995) ("If possible, a court should interpret a contract so that all parts are given meaning."). Specifically, MSA points to the Background Recitals, which refer to the Premises as "a parking lot property"; section 1, which states that "Tenant may use the Premises … for vehicular parking purposes only in connection with the use, tenancy, and occupancy of the Shopping Center as a retail shopping center and commercial movie theater property and for no other purposes"; and section 4, which states that "Tenant shall not … alter or improve the Premises other than in conducting the Maintenance Activities to maintain the Premises for parking lot use." MSA argues that these provisions are inconsistent with the proposition that the Premises

21

encompass the portion of the easement area on Lot 1 comprising a driving lane and a walking lane, because the lanes are used for ingress and egress, and parking on those lanes would contravene the purpose of the easement. However, MSA does not explain why, if that was the intention, the parties did not draft the Lease to define the Premises as "the parking lot on Lot 1."

¶41 Alternatively, MSA argues that the references to "parking lot" throughout the Lease make the depiction on Exhibit A ambiguous. We disagree. It is true that the three passages in the Lease that we have just quoted indicate that the parties intended the leased property to be used for purposes of parking. But these passages do not render ambiguous the language of the Lease that defines the Premises to be "Lot 1." *See **Raasch***, 310 Wis. 2d 230, ¶11 ("'[W]here the terms are plain and unambiguous, it is the duty of the court to construe it as it stands.'" (quoted source omitted)). Moreover, the portion of the easement area on Lot 1, defined in the Agreement as comprising "ingress and egress easement[s]," is used to access the parking spaces in the parking lot, which would be entirely consistent with the parties' evident intent under the Lease that the Premises be used for parking purposes.

### 2. Maintenance and Payment Responsibilities

¶42 MSA argues that, even if the Lease applies to Lot 1 including the parking lot and the portion of the easement area on Lot 1, the Lease does not make MSA responsible, at its sole expense, for the maintenance and repair of the portion of the easement area located on Lot 1. In other words, MSA argues that the Lease does not supplant the obligation of the Lot 1 owner under the Agreement to pay Lot 1's proportionate share of the easement area maintenance costs. Normandy argues to the contrary.

22

¶43 For the following reasons, we conclude that the only reasonable interpretation of the language assigning "Maintenance Activities" to MSA is that, in entering into the Lease, MSA assumed sole responsibility for undertaking and paying for the maintenance of Lot 1, which includes the easement area on Lot 1. Accordingly, the Lease is a defense to MSA's claim for reimbursement of Lot 1's proportionate share of the easement area maintenance costs under the Agreement from 2012 to 2018, when the Lease was in effect, and, therefore, that portion of MSA's claim was properly dismissed.

¶44 First, the Lease states that MSA is "responsible at its sole cost and expense for all necessary maintenance, repairs and replacement *of the Premises* to keep *the Premises* in good and sound condition including, but not limited to, snow removal, resurfacing or painting of the parking lot, filling pot holes, sealing, lighting and landscaping." (Emphasis added.) As explained above, "the Premises" includes both the parking lot and the portion of the easement area on Lot 1. Therefore, it follows that MSA must maintain the portion of the easement area on Lot 1 "at its sole cost and expense." *See **Tufail v. Midwest Hosp., LLC***, 2013 WI 62, ¶26, 348 Wis. 2d 631, 833 N.W.2d 586 ("Where the terms of a contract are clear and unambiguous, we construe the contract according to its literal terms.").

¶45 Second, the section of the Lease that absolves the owner of Lot 1 of "any maintenance, repair, or improvement responsibilities or duties with respect to the Premises of any kind or nature" reinforces the reasonable interpretation that the Lease makes MSA solely financially responsible for maintenance of the portion of the easement area on Lot 1 as part of the Premises. That is because responsibility for a proportionate share of the easement area maintenance costs under the Agreement can reasonably be understood as a "maintenance …

23

responsibilit[y] or dut[y] with respect to the Premises," given that the proportionate share requirement is undisputedly tied to ownership of the Premises, namely, Lot 1. MSA asserts in one sentence of its appellate briefing that, even if the Lease makes MSA responsible for the expenses of maintaining the portion of the easement area on Lot 1, Normandy would still be responsible for Lot 1's proportionate share of the costs of maintaining the portions of the easement area located on Lots 2 and 3. However, Normandy does not develop this assertion into a supported argument that such an interpretation is reasonable, and a viable argument is not readily apparent to us. *See Associates Fin. Servs. Co. of Wis. v. Brown*, 2002 WI App 300, ¶4 n.3, 258 Wis. 2d 915, 656 N.W.2d 56 (this court may decline to consider conclusory and undeveloped arguments that are not adequately briefed); *see also State Farm Mut. Auto. Ins. Co. v. Langridge*, 2004 WI 113, ¶41, 275 Wis. 2d 35, 683 N.W.2d 75 (contract is not ambiguous when only one interpretation is reasonable); *Ripp Distrib. Co.*, 411 Wis. 2d 630, ¶29 (contract provision is unambiguous if it is susceptible of only one *reasonable* interpretation).

¶46 We acknowledge that the "proportionate share" obligation under the Agreement is an automatic one-third share, with no direct connection to the relative sizes of the portions of the easement area on the three lots, while the "sole expense" obligation under the Lease is directly connected to the portion of the easement area on Lot 1. However, it remains that MSA does not develop, and we do not readily discern, a reasonable and workable interpretation of the Lease language, based on this distinction, that preserves the Lot 1 owner's proportionate share obligation under the Agreement. The parties could certainly have been more precise in their drafting, but that is not the issue. We are not assessing the quality

of drafting. Our obligation is simply to determine whether there is a single reasonable interpretation, and we conclude that there is.

¶47 In sum on this issue, we conclude that the only reasonable interpretation of the language in the Lease is that, in entering into the Lease, MSA assumed sole responsibility for undertaking and paying for the maintenance of Lot 1, which includes the easement area on Lot 1. Accordingly, the Lease is a defense to MSA's claim for reimbursement of Lot 1's proportionate share of the easement area maintenance costs under the Agreement from 2012 to 2018, when the Lease was in effect.

## CONCLUSION

¶48 For the reasons stated above, we conclude that MSA's claim for reimbursement of the proportionate share of its easement area maintenance costs for 2008-2018 pursuant to its 2017 invoice is timely. We further conclude that the Lease is a defense to MSA's claim for reimbursement of the proportionate share of its easement area maintenance costs for 2012-2018. Accordingly, we affirm in part, reverse in part, and remand this case to the circuit court.

*By the Court.*—Orders affirmed in part; reversed in part and cause remanded.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

25